## WESTERN UNION TELEGRAPH COMPANY *v.* BIGGERSTAFF.

[No. 22,095.    Filed February 20, 1912.]

1. DAMAGES.—*Breach of Contract.—Measure of Damages.*—Damages recoverable for a breach of contract are those resulting from the usual, natural and probable consequences of the breach, which the parties may be thought to have had in mind at the time of entering into the contract, and such special damages which actually occur and are referred to in the contract. p. 172.

2. DAMAGES.—*Tort.—Measure of Damages.*—In actions for tort all damages directly traceable to the wrong done, and arising without an intervening agency, and without fault of the injured person, are recoverable. p. 174.

3. TELEGRAPHS AND TELEPHONES.—*Failure to Deliver Message.—Damages.—Statute.*—Pursuant to §§5782, 5783 Burns 1908, §§4177, 4178 R. S. 1881, a telegraph company is liable for special damages for failure to deliver a message where the addressee lives within one mile of the telegraph station, or within the city or town in which the station is located. p. 174.

4. TELEGRAPHS AND TELEPHONES.—*Violation of Public Duty.—Nondelivery of Messages.—Damages.*—Where the complaint and evidence in an action against a telegraph company show a wrongful violation of the duty to deliver messages imposed by §§5782, 5783 Burns 1908, §§4177, 4178 R. S. 1881, such company is liable for such damages as flow directly from such violation as a natural and probable result of such wrongful act. p. 175.

5. TELEGRAPHS AND TELEPHONES.—*Failure to Deliver Message.—Loss of Benefit of Contract.—Damages.*—Where plaintiff, a physician, had a contract whereby he was to receive $200 for the treatment of a patient, to be paid at the rate of $25 for each visit, and if the patient showed improvement arrangements were to be made for further treatment, the physician was to begin the treatment when notified by telegram, and a telegram was sent requesting the physician to come and on the succeeding day a second telegram was sent, but neither telegram was delivered, which resulted in the employment of another physician instead of plaintiff; the company was liable under the evidence for compensatory damages and a verdict of $100 for plaintiff was justified. pp. 176, 177.

6. TELEGRAPHS AND TELEPHONES.—*Failure to Deliver Message.—Importance of Message.—Notice.*—The fact that a message was sent to a physician by telegraph demanding his presence at a

distant point the following day, was of itself sufficient to indicate its importance and to warn defendant's agents that harm and loss would follow its nondelivery.   p. 177.

From Huntington Circuit Court; *Samuel E. Cook,* Judge.

Action by James T. Biggerstaff against the Western Union Telegraph Company.   From a judgment for plaintiff, the defendant appeals.   (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.)   *Affirmed.*

*Pickens, Moores, Davidson & Pickens,* and *Allen P. Vestal,* for appellant.

*J. W. Moffett* and *C. K. Lucas,* for appellee.

Cox, J.—This was an action to recover damages alleged to have resulted from the failure of appellant to deliver two telegrams to appellee, the addressee.   The complaint was in two paragraphs, alike except that one was based on the first message and the other on the second.   There was an answer of general denial, a trial by jury, and a verdict for appellee for $100.

The assignments of error challenge the sufficiency of the complaint and the correctness of the action of the trial court in overruling appellant's motion for a new trial.   One of the causes for a new trial is that the evidence is insufficient in law to sustain the verdict.

As the attack on the complaint and the sufficiency of the evidence involve practically the same question of law, a consideration of this question will settle both, and the merits of the appeal.

The first paragraph of the complaint alleges, in substance, that on October 21, 1908, appellant maintained telegraph lines between the village of Bippus, Huntington county, and the town of Dunkirk, Jay county, both in this State, and kept offices in both places for receiving, sending and delivering telegraphic messages for the public; that appellee was a practicing physician with an office and residence in Bippus, and had, before that date, been employed by contract with

W. C. and T. M. Huffman, who lived near Dunkirk, to render professional services; that when such services were needed the Huffmans were to notify appellee by telegraph to come to Dunkirk; that on October 21, 1908, the Huffmans delivered to appellant at its office in Dunkirk the following telegram:

Dunkirk, Indiana, 10/21, 1908.
To Doctor Biggerstaff,
            Bippus, Indiana.
Meet me at Dunkirk Oct. 22d.
                                    W. C. Huffman.

That the Huffmans complied with appellee's rules and requirements, and paid the regular and full charges for the transmission and delivery of the message; that appellee had lived in Bippus three years prior to the sending of the message, and was at his home, which was within one mile of appellant's office in Bippus, so that the message could have been promptly delivered to him; that appellant wholly failed and neglected to deliver the message, and by reason of such failure the Huffmans were compelled to employ another physician, and appellee lost the employment under said contract; that by reason thereof, and of appellant's said negligence, appellee was damaged in the sum of $1,000.

The second paragraph counted on a message sent the next day in the same terms as that set out, except that the meeting at Dunkirk was fixed for a day later.

The evidence shows that appellee was a practicing physician at Bippus, and maintained his office and residence there at the time the telegrams were sent, and had been for three years before. On October 16 he was called to see W. C. Huffman at Albany, Indiana, who was seriously ill from some chronic stomach trouble. After examination he said he could cure him. Huffman did not have the means to pay for treatment, and his brother, T. C. Huffman, entered into an oral agreement with appellee, that he would take the sick man to his home near Dunkirk to have him treated, and

that he would pay appellee for treating him the sum of $200, which was to be paid at $25 for each visit made. If improvement had been made in his condition when that amount was exhausted, the matter of further treatment and the payment for it would depend on other arrangements. T. C. Huffman was to notify appellee by telegraph when to come to begin his professional services. Pursuant to this arrangement, T. C. Huffman did, on October 21, take his brother to his home, and on the afternoon of that day delivered to appellant's agent at Dunkirk the first message to which he signed his brother's name. As appellee did not respond to that, he sent the second message on the following day. Both messages were transmitted, and each was received by appellant's agents at its office in Bippus about 8 o'clock at night on the day it was sent. No effort was made by those agents to deliver either message, although the home and office of appellee were both less than one mile from appellant's office, and within the limits in which they delivered messages, and notwithstanding the fact that the agent who received both messages passed appellee's house on the way home from work on each of the nights after their receipt at the office, and knew that he lived there. Appellee was at home, and would have received the messages if delivered. Not receiving the expected message, appellee wrote to Huffman on October 30, and learned from him that the messages had been sent, and that not hearing from him, another physician had been employed. Thereupon appellee called at appellant's office in Bippus, on November 1 or 2, and, upon his request, both messages were for the first time delivered to him. Appellee lost the employment, and realized nothing from it. The treatment of the sick man would have required from eight to twelve visits from him.

The contention is that the words of the messages do not in themselves indicate the importance of the telegram and the special damages which might result from a failure to deliver them, and that, as this is so, it was necessary to allege

and prove extraneous facts, showing that the company was otherwise informed, or had knowledge of the nature of the business on which appellee was called by the messages, and that the performance of the contract and his compensation depended on their delivery. It is also insisted that as

1. the complaint does not contain averments of such facts, and as evidence was not given to prove them, a case for only nominal damages is made, the other damages shown being too remote to be recovered. The well-known case of *Hadley* v. *Baxendale* (1854), 9 Exch. *341 is the authority upon which we are asked to sustain appellant in the claim made. The rule there laid down for estimating damages is this: ''Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i. e.*, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.'' Under this rule, a recovery of profits was denied in an action by a mill owner against a carrier for delay in forwarding the broken shaft of a steam engine, whereby the mill was caused to remain idle for a longer time than it would otherwise. It is the last provision of the rule, as above stated, which counsel ask to have applied to the determination of this case. This rule was formulated to settle and make clear the way for fixing damages; but the provision in question has been many times misconstrued and misapplied to the great confusion of the law, and especially is this true in the application of it in actions for damages growing out of the failure to properly transmit and deliver telegraph messages. In the case of The Argentino (1888), 13 P. D. 191, the provision in question was construed to have the effect of extending the first part of the rule in estimating the damages in cases of the

breach of a contract, and not to limit it as many courts have, apparently, construed it to do, and as counsel contend that it does. It was also there held that this provision of the rule applied only to cases of breach of contract, and not to actions arising out of tort and that, with this exception, the principles of the common law, both in cases of contract and tort permit the recovery of such damages as are produced immediately and naturally by the act complained of. And under this last rule it was held, in the case last cited, which was an action by the owner of a ship against the owner of another vessel to recover damages resulting from a collision, that the profits which might come from a voyage to have been undertaken after that in which she was disabled, and for which a contract had been made, were not too remote, and might be taken into account in fixing the damages. On appeal this conclusion was approved in the case of *Owners of Steamship Gracie* v. *Owners of Steamship Argentino* (1889), 14 App. Cas. 519. This is in harmony with the declarations of this court on this question. In *Coy* v. *Indianapolis Gas Co.* (1897), 146 Ind. 655, 46 N. E. 17, 36 L. R. A. 535, it was said: ''In actions on contract, * * * the damages that may be recovered for a breach of the covenants and conditions are, (1) those that result from the usual, natural, and probable consequences of the breach, and which, therefore, the parties may be thought to have had in mind when they entered into the contract; and (2) special damages referred to in the contract, and which actually occur, although not such as might naturally and probably be expected to arise out of a breach of the contract. It is to be observed that such special damages are also in contemplation of the parties in making the contract, as well as the damages of the first class which naturally flow from a violation of the contract. The difference is, that damages naturally arising from a breach of the contract need not be mentioned in the agreement made, but will be presumed to have been in contemplation of the parties, whereas special dam-

ages, or those not naturally or usually arising from a breach of the contract, though contemplated by the parties, must be specially referred to in the contract itself.'' In that case it was said that the second part of the rule relating to special damages had no application to actions for tort, and as to such actions it was said: ''The rule as to recovery of damages for tort differs in some respects from that which obtains in case of simple breach of contract. All damages directly traceable to the wrong done, and arising without an intervening agency, and without fault of the injured person himself, are recoverable. The wrong in such cases is said to be the proximate cause of the injury.''

Sections 2 and 3 of the act of 1853 (§§5782, 5783 Burns 1908, §§4177, 4178 R. S. 1881), require telegraph companies to deliver all dispatches, by messenger, to the persons to whom they are addressed if they live within one mile of the telegraph station, or within the city or town in which the station is located, and make such companies liable for special damages occasioned by the failure or neglect so to do.

Telegraph companies are invested with certain valuable powers and privileges because of the public character of the business they are engaged in. They undertake to serve the public; and even in the absence of a statute such as this, they should be held liable to the addressee of a message they have undertaken to deliver, as for a negligent violation of a public duty. Jones, Telegraph and Telephone Companies §478.

The case before us is not an action on the contract to transmit and deliver the telegrams sent by Huffman. Both the complaint and the evidence show an inexcusable violation of a duty imposed by statute, which by its express terms requires the violator to answer for the special damages resulting therefrom. That part of the rule laid down in *Hadley* v. *Baxendale, supra,* and the narrow construction

of it on which reliance is placed by appellant, has therefore, no application. *Western Union Tel. Co.* v. *Fenton* (1875), 52 Ind. 1; *Western Union Tel. Co.* v. *McKibben* (1887), 114 Ind. 511, 14 N. E. 894; *Hadley* v. *Western Union Tel. Co.* (1888), 115 Ind. 191, 15 N. E. 845; *Bierhaus* v. *Western Union Tel. Co.* (1893), 8 Ind. App. 246, 34 N. E. 581; *Western Union Tel. Co.* v. *Lawson* (1910), 182 Fed. 369, 105 C. C. A. 451; *McPeek* v. *Western Union Tel. Co.* (1899), 107 Iowa 356, 78 N. W. 63, 70 Am. St. 205, 43 L. R. A. 214; *Barker* v. *Western Union Tel. Co.* (1908), 134 Wis. 147, 114 N. W. 439, 14 L. R. A. (N. S.) 533, 126 Am. St. 1017; *Bailey & Co.* v. *Western Union Tel. Co.* (1910), 227 Pa. St. 522, 76 Atl. 736; Jones, Telegraph and Telephone Companies §§518, 519.

As the complaint and evidence both show clearly a wrongful violation of a duty imposed by statute, a case for more than nominal damages was established. The rule is, in such a case, that the violator is liable for such damages as flow directly therefrom as a natural and probable result of the wrongful act. *Coy* v. *Indianapolis Gas Co., supra; Cleveland, etc., R. Co.* v. *Tauer* (1911), 176 Ind. 621, 96 N. E. 758, and authorities cited.

In Jones, Telegraph and Telephone Companies §519 it is said: "Having certain public duties to perform, on a failure to properly discharge them, they will be liable to anyone injured thereby. For instance, they hold themselves out as being ready and willing to transmit all proper messages tendered to them; and, as people seldom resort to these companies for their services unless the matter is of much importance and must be attended to quickly it is presumed that they will transmit the message in the exact words in which it was delivered to them, and deliver it to the addressee as promptly and speedily as it is possible for them to do. This is a public duty which they owe to everyone who applies to them for services, and one which they must take

daily cognizance of; and, when they fail to discharge this duty, it is supposed that they contemplated, at the time of accepting this service, the result of such failure. It is further presumed that they know—where no information is given them to the contrary—that all messages delivered to them are of importance, and that great loss or injury may be the result of a failure on their part to properly discharge their duty; and that they, therefore, are supposed to have contemplated all the damages flowing naturally and directly from such failure, although they may not have had any actual knowledge of what damages might result at the time of accepting the message.''

It seems apparent that appellee lost the expenses of the trip he made to examine the prospective patient, and the benefit of the negotiations with the brother which 5. produced a contract with him on the performance of which appellee would certainly have realized $200. Up to this amount the appellee had the original undertaking of the brother to pay at the rate of $25 a visit; and beyond this there was a reasonable probability that further treatment, to the extent of four additional visits, would have been made, for appellee testified that from eight to twelve trips to the sick man would probably have been necessary, and the understanding was, that whether they should be made and the arrangements to pay therefor depended on the progress the patient made towards recovery under the treatment for which the $200 was to pay. As bearing on this, it may be said that at the time of the trial, about eight months later, the evidence shows that the sick man was able to work at his trade, and had improved wonderfully in health under the treatment of another physician who had been employed. These losses were not speculative or remote, but followed directly as a natural and probable sequence of appellant's violation of duty. Its wrongful failure to deliver the messages was as directly the cause of appellee's losses as would

have been a violation of a duty of reasonable care for his personal safety, which it might have owed him if it had produced disabling physical injuries, and so made it impossible for him to treat the patient as he had engaged to do.

The facts that the message was sent to a physician, that its words were an imperative call for his presence at a place three counties removed from his residence on the day

6. following, that the telegraph was used instead of the mails all indicated the importance of it and were sufficient to warn appellant's agents that harm and loss would follow its nondelivery. And with the first message not delivered, but lying in appellant's office without attention, the receipt of the second one on the following day doubly emphasized this warning.

In addition to the cases before cited, the following are valuable authority on the question involved: *Western Union Tel. Co.* v. *Henley* (1901), 157 Ind. 90, 60 N. E. 682; *Providence Washington Ins. Co.* v. *Western Union Tel. Co.* (1910), 247 Ill. 84, 93 N. E. 134, 30 L. R. A. (N. S.) 1170, 139 Am. St. 314; *Postal Tel. Cable Co.* v. *Lathrop* (1890), 131 Ill. 575, 23 N. E. 583, 7 L. R. A. 474, 19 Am. St. 55; *Western Union Tel. Co.* v. *Longwill* (1889), 5 N. Mex. 308, 21 Pac. 339; *Fairley* v. *Western Union Tel. Co.* (1895), 73 Miss. 6, 18 South. 796; *Western Union Tel. Co.* v. *McLaurin* (1880), 70 Miss. 26, 13 South. 36; *Western Union Tel. Co.* v. *Church* (1902), 3 Neb. (Unofficial) 22, 90 N. W. 878, 57 L. R. A. 905; *Cowan* v. *Western Union Tel. Co.* (1904), 122 Iowa 379, 98 N. W. 281, 101 Am. St. 268, 64 L. R. A. 545; 16 Current Law 2358, 2359 and cases cited; 2 Thompson, Negligence §2471; 2 Joyce, Damages §§1402, 1432.

From the foregoing, it clearly follows that appellee was entitled to a verdict for compensatory damages, and

5. as the amount awarded was palpably within his rights, the complaints made relating to the exclusion of evi-

dence, and the giving of one instruction, even if technically just, do not authorize a reversal of the case.

*Judgment affirmed.*

NOTE.—Reported in 97 N. E. 531. See, also, under (1) 13 Cyc. 32, 156; (2) 13 Cyc. 28; (3) 37 Cyc. 1750; (4) 37 Cyc. 1755; 117 Am. St. 287; 10 Am. St. 778; 30 L. R. A. (N. S.) 1116; (5) 37 Cyc. 1766; 14 L. R. A. (N. S.) 533; (6) 37 Cyc. 1750. For a discussion of the necessity that damages from the failure to transmit telegram be contemplated, see 1 Ann. Cas. 361; 10 Ann. Cas. 479.