ADAM ARMSTRONG, Plaintiff-Appellant, *v.* JACK CIONE, Defendant-Appellee, and JOHN and JANE DOES 1-10, Defendants

NO. 10805

(CIVIL NO. 75020)

JANUARY 6, 1987

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

In an action based mainly on negligence, breach of warranty of habitability, and strict products liability, plaintiff-appellant Adam Armstrong (Plaintiff) appeals from the judgment in favor of defendant-appellee Jack Cione (Defendant). We affirm.

## FACTS

Plaintiff rented Apartment 103-A (Apartment), located at 441 Kanekapolei Street in Honolulu, from Defendant. The Apartment was originally part of a two-bedroom unit within a co-operative apartment building called the Waikiki Regent, which was constructed in 1959 and contained nine identical units. The Apartment resulted from a conversion of one of the two-bedroom units into two one-bedroom units, 103-A and 103-B, by a previous owner. Defendant bought the two one-bedroom units in May 1981. He used the Apartment for storing equipment and material used in his entertainment and production business, and apartment 103-B as an office.

Late in 1981 Defendant rented the Apartment for the first time to Tom Cesar (Cesar), who occupied the Apartment until March 1982. Plaintiff took over rental of the Apartment after Cesar. Plaintiff had

been a guest of Cesar's in the Apartment on several occasions during the latter's tenancy and was familiar with the premises.

On April 12, 1982, Plaintiff's right hand and wrist were injured when a glass panel in the Apartment's shower door shattered as he attempted to close it. The shower door was installed when the Apartment was originally built and was constructed of three glass panels within hinged aluminium frames on an aluminum track. Two of the glass panels folded into the shower in a V-shaped pattern, while the third panel slid on the track. Safety glass was not used in the construction of the shower door.

It is unclear whether the parties inspected the Apartment before or at the time the rental period began, although both parties signed an inventory sheet and an updated rental agreement. Plaintiff testified that the agreement was signed after the injury occurred and Defendant testified it was signed before. Defendant testified he was never aware of a crack in the shower door. The testimony of Plaintiff and his witness, Tia Payes, a frequent guest of Plaintiff's in the Apartment, indicates they were both aware of a crack in the shower door before the accident. Cesar and Plaintiff both testified that the shower door was sometimes difficult to close; however, neither Cesar nor Plaintiff ever complained to Defendant about the shower door.

Defendant testified that for the ten years preceeding the accident, he had not rented out any other properties. After Plaintiff moved out of the Apartment at the end of April 1982, Defendant rented it on one occasion for three weeks. After that, and until the time of trial, the Apartment was not rented, but it was occupied by someone "sort of as a caretaker."

Plaintiff's amended complaint alleged causes of action in negligence, "negligence *per se*," breach of warranty of habitability, products liability, and strict liability in tort.[1] Plaintiff averred that the glass shattered because it was either cracked or defective.

Jury trial began on April 9, 1985. At the close of Plaintiff's case-in-chief, Defendant moved for a directed verdict on all causes of action. The trial court granted Defendant's motion except as to the negligence cause of action. At the end of trial, the trial court reconsidered its prior

---

[1]Plaintiff also moved to proceed against unidentified defendants, designated as John and Jane Does I through X. No other defendants were identified and the case proceeded against Defendant alone.

ruling on Defendant's motion for directed verdict and reinstated the warranty of habitability claim. In a special verdict, the jury found that Defendant had not breached the warranty of habitability, and found Plaintiff was 67% negligent in causing his injuries and Defendant 33% negligent. Judgment was entered for Defendant. Hawaii Revised Statutes (HRS) § 663-31(c) (1976).[2]

After his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial was denied on June 28, 1985, Plaintiff timely appealed.

Plaintiff raises a number of issues in the appeal, all of which are without merit.

## I.

Plaintiff contends that the trial court erred in granting Defendant's motion for directed verdict on the issue of strict products liability. He argues that the trial court should either have ruled as a matter of law that Defendant was not an "occasional seller" within the meaning of the exception to the rule of strict products liability, or have allowed the jury to make that determination.[3] We hold that if there was error it was harmless.

In *Kaneko v. Hilo Coast Processing,* 65 Haw. 447, 654 P.2d 343 (1982), a products liability case, the jury's special verdict found that the defendant Mutual Welding was strictly liable for the plaintiff's injuries, and was also 73% negligent in causing those injuries. The jury also found that the plaintiff was 27% negligent. The trial court reduced the total jury award by 27%, and both parties appealed. The supreme court held that the doctrine of comparative negligence is applicable in strict products liability cases, stating,

We believe that the better reasoned view is that comparative negligence is not incompatible with strict products liability. Our

---

[2] *See* footnote 4, *infra.*

[3] *See Stewart v. Budget Rent-A-Car Corp.,* 52 Haw. 71, 470 P.2d 240 (1970), where the supreme court modified and adopted the rule of strict products liability expressed in Restatement (Second) of Torts, § 402 (1965). Under the modified rule a plaintiff need only show that a defective product is "dangerous," rather than "unreasonably dangerous," as is the case under the Restatement rule. The rule provides that strict products liability is not applicable to an "occasional seller." *Id.,* comment (f).

adoption of the theory of strict products liability was premised on equity and fairness and our concern for human safety. The interjection of comparative negligence into strict products liability will reduce an injured plaintiff's award by an amount equal to the degree to which he is culpably and contributorily negligent. Such a system will accomplish a fairer and more equitable result. We therefore reject the academic argument that the merger of the two concepts is prevented because of the semantics. We find that fairness and equity are more important than conceptual and semantic consistency and hold that comparative negligence is not incompatible with strict products liability[,]

*id.* 65 Haw. at 461, 654 P.2d at 352, and affirmed the reduction of the jury award.

The *Kaneko* court noted that the merger would still hold the manufacturer strictly liable, and "[t]he only effect that comparative negligence will have in strict products liability will be to reduce the amount of an award by the degree to which a plaintiff is contributorily negligent." *Id.* 65 Haw. at 462, 654 P.2d at 353. However, the *Kaneko* court did not address the question posed here, whether a residential tenant may recover against his landlord under a strict products liability claim which had been joined with a negligence action, where the tenant is found to be more negligent than the landlord. We answer no.

The doctrine of comparative negligence in this jurisdiction stems from the legislature's enactment in 1969 of HRS § 663-31.[4] Act 227, 1969

---

[4]Hawaii Revised Statutes (HRS) § 663-31 (1976) provides:

Contributory negligence no bar; comparative negligence; findings of fact and special verdicts. (a) Contributory negligence shall not bar recovery in any action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made.

(b) In any action to which subsection (a) of this section applies, the court, in a nonjury trial, shall make findings of fact or, in a jury trial, the jury shall return a special verdict which shall state:

    (1) The amount of the damages which would have been recoverable if there had been no contributory negligence; and

    (2) The degree of negligence of each party, expressed as a percentage.

(c) Upon the making of the findings of fact or the return of a special verdict, as is

Haw. Sess. Laws 442. Prior to that, Hawaii negligence actions were governed by common law principles, and contributory negligence, absent a negligent defendant's "last clear chance" served as a complete bar to a plaintiff's recovery. *Pacheco v. Hilo Electric Light Co., Ltd.*, 55 Haw. 375, 520 P.2d 62 (1974). The *Kaneko* court does not cite HRS § 663-31; however, it is the only basis for application of the doctrine of comparative negligence in this jurisdiction and the court must have had it in mind. Therefore, effective merger of the two doctrines requires that all the provisions of HRS § 663-31 be applied to strict products liability cases, and the injured plaintiff cannot recover in such cases if the proportion of negligence attributed to him exceeds the proportion of negligence attributed to the defendant. Consequently, the jury's finding that Plaintiff was 67% negligent in causing his injuries defeats any recovery by him for strict products liability and any error by the trial court in directing a verdict on that claim was immaterial. *See Reed & Martin, Inc. v. City and County*, 50 Haw. 347, 440 P.2d 526 (1968); 5 Am. Jur. 2d *Appeal and Error* § 776 (1962); *Davis v. Portland General Electric Co.*, 286 Or. 195, 593 P.2d 1135 (1979).

II.

Plaintiff asserts that the jury's verdict was "internally inconsistent," because it found that Defendant did not breach a warranty of habitability to Plaintiff but that Defendant was negligent.[5] For that reason,

---

contemplated by subsection (b) above, the court shall reduce the amount of the award in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made; provided that if the said proportion is greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought, the court will enter a judgment for the defendant.

(d) The court shall instruct the jury regarding the law of comparative negligence where appropriate.

[5]The special verdict form and the jurors' answers read in pertinent part:

1.a. Did Defendant breach a warranty to Plaintiff?
No.

If your answer to question 1.a. is "no," do not answer the next question but go to uestion 2.a.

\* \* \*

2.a. Was Defendant negligent?
Yes.

Plaintiff asserts that a new trial should have been granted.[6] Plaintiff contends that the import of the negligence finding is that the Apartment was "unsafe" and, therefore, the warranty was breached. The argument is without merit.

"A conflict in the answers to questions in a special jury verdict form does not automatically warrant a new trial. A new trial will be ordered only if the conflict is irreconcilable." *Vieau v. City and County of Honolulu,* 3 Haw. App. 492, 498, 653 P.2d 1161, 1165 (1982) (citing *Boudreau v. General Electric Co.,* 2 Haw. App. 10, 625 P.2d 384 (1981)). In the instant case, the conflict can be reconciled.

A cause of action for breach of implied warranty of habitability is based upon an entirely independent legal theory and involves different legal issues from those in a cause of action for negligence. Under the law of implied warranty of habitability, the defect or unsafe condition "must be of a nature and kind which will render the premises unsafe, or unsanitary and thus unfit for living therein." *Kline v. Burns,* 111 N.H.

---

If your answer to 2.a. is "no" do not answer the next question. If your answer is "yes," answer 2.b.
    2.b. Was such negligence a legal cause of the damages suffered by the Plaintiff?
        Yes.
If you answered yes to any of the following questions 1.b., or 2.b., answer the following questions; if not, sign the form and call the bailiff.
    3.a. Was Plaintiff negligent?
        Yes.
If you answered "no," do not answer any of the following questions but go on to question 4. If you answered "yes," answer questions 3.b. and 3.c.
    3.b. Was Plaintiff's negligence a legal cause of the damages he suffered?
        Yes.
    3.c. If you answered yes to question 3.b. apportion the fault for Plaintiff's injuries between Plaintiff and Defendant by percentages. If you have already found that a party was not at fault or that his fault was not the cause of the injuries, then that party's share of fault is zero percent. The total of the percentage(s) must equal one hundred percent.
        Plaintiff, 67 percent.
        Defendant, 33 percent.

[6]Defendant also argues that a new trial should have been granted because of error in admitting "exhibit BB" relating to Plaintiff's income from "tips." Inasmuch as we hold that Defendant was not liable, any error in admitting "exhibit BB" was not prejudicial. We are not persuaded that the exhibit's impact on Plaintiff's credibility was of such monumental import that it "tipp[ed] the balance in the minds of the jurors." *Ferreira v. General Motors Corp.,* 4 Haw. App. 12, 18, 657 P.2d 1066, 1070 (1983).

Similarly, we conclude that Plaintiffs' argument that a new trial should be granted because Defendant conducted a "trial by ambush" is without merit.

87, ___, 276 A.2d 248, 252 (1971). The premises must be substantially unsuitable for living so that the breach of the warranty would constitute a constructive eviction of the tenant.[7] *Reste Realty Corp. v. Cooper,* 53 N.J. 444, 251 A.2d 268 (1969). Not "every transient inconvenience of living attributable to the condition of the premises will be a legitimate subject of litigation. The warranty is one of habitability and is not a warranty against all inconvenience or discomfort." *Academy Spires, Inc. v. Jones,* 108 N.J. Super. 395, ___, 261 A.2d 413, 417 (1970). A cause of action for negligence against a landlord on the other hand is based upon an injury to person or property caused by the landlord's breach of a duty to maintain the rental premises in safe condition.

The jury's verdict was not "irreconcilable" and the cases cited by Plaintiff in support of his argument are inapposite. The jury apparently

---

[7]In Hawaii, rat infestation of leased premises constitutes a breach of implied warranty of habitability. *Lemle v. Breeden,* 51 Haw. 426, 462 P.2d 470 (1969). In *Lemle, supra,* the plaintiffs sued to recover the deposit and rent payment totalling $1,190.00 under the doctrine of implied warranty of habitability and fitness for use. The court held that defendant had breached his implied warranty of habitability and allowed recovery.

The application of an implied warranty of habitability in leases gives recognition to the changes in leasing transactions today. It affirms the fact that a lease is, in essence, a sale as well as a transfer of an estate in land and is, more importantly, a contractual relationship. From that contractual relationship an implied warranty of habitability and fitness for the purposes intended is a just and necessary implication.

*Id.* 51 Haw. at 433, 462 P.2d at 474. *See also Javins v. First National Realty Corp.,* 428 F.2d 1071 (D.C. Cir. 1970), *cert. denied,* 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970); *Green v. Superior Court of City and County of San Francisco,* 10 Cal. 3d 616, 111 Cal. Rptr. 704, 517 P.2d 1168 (1974).

Other instances where the breach of implied warranty constituted a constructive eviction are: *Gibbons v. Hoefeld,* 299 Ill. 455, 132 N.E. 425 (1921); *Higgins v. Whiting,* 102 N.J.L. 279, 131 A. 879 (Sup. Ct. 1926) (failure of a landlord to supply heat as covenanted in the lease so that the apartment was "unlivable" on cold days); and *McCurdy v. Wyckoff,* 73 N.J.L. 368, 63 A. 992 (Sup. Ct. 1906) (failure of a lessor of an apartment building to maintain the main waste pipe which became clogged with sewage, emitting offensive odors and creating a health hazard) (cases cited in *Reste Realty Corp. v. Cooper,* 53 N.J. 444, ___, 251 A.2d 268, 274-75 (1969)).

In *Lemle,* Justice Levinson, writing for the supreme court stated that the remedies available to a lessee for a breach of the implied warranty "are the basic contract remedies of damages, reformation, and rescission." *Id.* 51 Haw. at 436, 462 P.2d at 475. Damages for personal injury is not normally a contract remedy. In *Boudreau v. General Electric Co.,* 2 Haw. App. 10, 625 P.2d 384 (1983), we stated that the "argument that the implied warranty of habitability does not extend to personal injuries seems to us to be logically meritless." *Id.* 2 Haw. App. at 17, 625 P.2d at 390. No doubt a case can be stated wherein personal injury may stem from conditions that make the premises unfit for living. However, that is not our case. The jury apparently found, and we agree, that the Apartment was not rendered unfit for habitation by the defective shower door.

found that Defendant was negligent because the shower door was unsafe, but that the shower door did not render the apartment uninhabitable so as to cause a constructive eviction and, therefore, there was no breach of implied warranty of habitability. The denial of the motion for new trial was properly granted.

### III.

Plaintiff argues that the trial court erred in refusing to give to the jury his proposed instruction no. 11,[8] and instead instructed the jury that,
> [w]henever a landlord and tenant relationship exists, the landlord has a duty to maintain the premises in a reasonably safe condition for the tenant

and read to the jury HRS § 521-55 (1976).[9] Plaintiff contends that the instructions tended to confuse the negligence issue, unduly emphasizing it and de-emphasizing the breach of implied warranty issue. The argument is without merit.

"In determining the sufficiency of a particular instruction, or part of a charge, it is not to be considered apart from its context, or the rest of the charge. Both in civil and in criminal cases the instructions of the court must be read together as one connected whole, to ascertain whether they correctly declare the law. The omissions or inaccuracies of one instruction may be cured by the contents of the other instructions, or some of them, and if, when the instructions of the court are considered as a whole, they correctly state the law and

---

[8]Plaintiff's proposed instruction no. 11 read as follows:

In the relationship between the landlord and a tenant, there is an implied warranty that the premises rented to the tenant are safe for normal use when a residential dwelling is leased by the landlord to the tenant.

Therefore, if you find that the glass shower door in the bathroom of the apartment in question made the premises unsafe, you may find that the Defendant is liable to the Plaintiff for his injuries, under the Plantiff's theory of breach of warranty of safety and habitability.

[9]HRS § 521-55 (1976) provides that:

Tenant's responsibility to inform landlord. Any defective condition of the premises which comes to the tenant's attention, which he has reason to believe is unknown to the landlord, and which he has reason to believe is the duty of the landlord or of another tenant to repair, shall be reported by the tenant to the landlord as soon as practicable.

are not inconsistent or misleading, the fact that a particular instruction or isolated paragraph may be objectionable, as inaccurate or misleading, will not constitute ground for reversal." *Ciacci v. Woolley,* 33 Haw. 247, 261, 262; *Wilson v. Von Holt,* 25 Haw. 529, 534; *Ginoza v. Takai Elec. Co.,* 40 Haw. 691, 711, 712; 53 Am. Jur., *Trial* § 842.

*Kometani v. Heath,* 50 Haw. 89, 93-94, 431 P.2d 931, 935 (1967).

We have had some difficulty deciphering Plaintiff's argument on this point. The language of the instruction quoted above is not found in the trial court's instruction no. 28 as is asserted in Plaintiff's opening brief. Instruction no. 28 dealt with a violation of a statute or ordinance as evidence of breach of the implied warranty of habitability, and Plaintiff has not urged error in that regard. Instead, the language is only one paragraph in the trial court's instruction no. 16, to which Plaintiff did not object. Under Rule 28, Hawaii Rules of Appellate Procedure (1984), we may disregard Plaintiff's point of error. However, we have considered it and as stated below we find no error.

Taken as a whole, the instructions read by the trial court correctly state the law applicable to the facts and circumstances of this case, and the trial court did not err in giving instruction no. 16, or in refusing Plaintiff's proposed instruction no. 11. *Kometani v. Heath, supra.*

We further hold that reading HRS § 521-55 to the jury was not error. In *Radford v. Morris,* 52 Haw. 180, 472 P.2d 500 (1976), cited by Plaintiff, the trial court read to the jury three sections of the Traffic Code of the City and County of Honolulu containing complex language regarding roadway boundaries and curblines, and the question of when automobile drivers should yield a right-of-way. The confusing language of the ordinances prompted the supreme court to admonish the bar against having statutes read as charges to the jury. The admonition is cautionary, however, rather than regulatory, and does not constitute a bar to such instructions. In the instant case, the language of HRS § 521-55 is very simple and easy to understand. Additionally, the evidence did support the instruction, contrary to Plaintiff's argument.[10] We find no

---

[10]Plaintiff on direct examination makes the following statement:

Q. Was there anything else that was distinctive about any of the panels of the shower door?

A. Yes. The one that broke had a crack in it.

error in the court's having read it to the jury. Neither do we find it improper to have furnished the written instruction to the jury along with the other instructions. Rule 20, Rules of the Circuit Courts (1971).

With regard to the statutory instruction, Plaintiff further argues that there is no evidence to support a duty on his part to inform Defendant of the crack in the shower door because it was not shown that Plaintiff knew or should have known that Defendant was unaware of the defect. However, the evidence shows that Defendant was not aware of any crack in the shower door at the start of Plaintiff's tenancy, and that Defendant never saw the crack until after the accident. Moreover, there is no evidence that Defendant was in the Apartment between the start of the tenancy and the accident. The inference is inescapable that Plaintiff should have known that Defendant was unaware of the defect.

Plaintiff also argues that because the shower door was not made of shatter-proof glass and failed to comply with section 1711(e) of the Uniform Building Code (UBC) (1973),[11] the shower door was latently defective and, since neither party knew of it, Plaintiff had no duty to

---

Testimony by Ms. Tia Payes on direct examination reveals the following:

Q. Let me ask you something, Tia. Did you notice anything at all distinctive about any of the glass panels in that shower door before Adam got hurt?

A. Yes. There was a crack in it.

On cross-examination, Plaintiff gave the following statements:

Q. That's fine. Isn't it true that at no time did you tell Mr. Cione that there was a crack in the glass door?

A. I never mentioned that to him.

Q. Isn't it also true that you never complained about any problems in the shower door?

A. Pardon me?

Q. Isn't it true that you never complained to Mr. Cione before the accident that you were having any problems with the shower door?

A. I never talked to Mr. Cione?

Q. You never complained to him about any problems with the shower door?

A. No sir.

Defendant testified as follows:

Q. Do you know whether or not there was a crack in the glass shower door when you rented it to Tom?

A. There was no crack.

Q. You are sure of that?

A. I am positive.

[11]Section 1711(e) of the UBC provides that a shower door shall be constructed from approved shatter-resistant materials. This requirement was imposed after the apartment was constructed. The jury was instructed that it could consider this as evidence of negligence.

inform Defendant. Nonetheless, Plaintiff testified he was aware of a crack and the duty was his regardless of the UBC violation.

Finally, Plaintiff's argument that the statutory language instruction was not proper because Defendant had not indicated in his pre-trial statements that he would rely upon Plaintiff's failure to warn Defendant of a defect in the premises as a defense, is without merit. Plaintiff's reliance upon the implied warranty of habitability necessarily involved the Landlord-Tenant Code, HRS chapter 521 (1976). Defendant had a right to compel Plaintiff to show he had complied with all of the statute's requirements and to rely on Plaintiff's failure to do so as a defense.

Affirmed.

*James T. Leavitt, Jr.* (*Woodruff K. Soldner* with him on the briefs; *James T. Leavitt, Jr.,* Attorney at Law, A Law Corporation, of counsel) for plaintiff-appellant.

*Shelton G.W. Jim On* (*Grant K. Kidani* with him on the brief; *Kidani, Oshima & Wong,* of counsel) for defendant-appellee.