**Terri J. JOHNSON, Appellant (Plaintiff Below),**

v.

**SCANDIA ASSOCIATES, INC., Oxford Management Company, Appellees, (Defendants Below).**

No. 06S01–9506–CV–785.

Supreme Court of Indiana.

Sept. 30, 1999.

William T. Rosenbaum, Indianapolis, Indiana, Attorney for Appellant.

Andrew C. Charnstrom, Indianapolis, Indiana, Attorney for Amicus Curiae Apartment Association of Indiana, Inc.

Peter A. Schroeder, Indianapolis, Indiana, Attorney for Appellees.

SHEPARD, Chief Justice.

Some Indiana cases have recognized that a warranty of habitability may be implied in a residential lease, giving rise to damages for breach of contract upon appropriate proof. In this appeal, we recognize for the first time that such a warranty may be implied in some leases and explore the conditions under which it may be held to exist. Ultimately, we conclude that the claimant in this case has not demonstrated that a warranty was implied in her lease.

## I. Statement of the Case

Scandia Associates, Inc., owns and operates an apartment complex in northeast Indianapolis through agent Oxford Management, Co. Terri Johnson sued Scandia and Oxford after suffering physical injuries caused by an electric shock she received when simultaneously touching two kitchen appliances while cooking in her apartment. She asserted liability on grounds of tort and contract.

The defendants moved to dismiss both claims. The trial court denied the motion as to the negligence claim, but dismissed the warranty claim. In the wake of the defense verdict on the negligence claim, Johnson appeals only the dismissal of her claim for breach of warranty.[1]

Johnson argues that Indiana courts have recognized an implied warranty of habitability in residential leases, and she maintains that such a warranty was implied in her written contract. Johnson acknowledges that current Indiana law on contracts does not give rise to such claims for injury, but argues for "a logical extension of the law."[2]

[1]. The Court of Appeals affirmed and reversed, dismissing Scandia's agent on the ground that Johnson and the agent were not in privity of contract. The Court reinstated Johnson's claim against Scandia, holding expressly for the first time that the implied warranty of habitability in a residential lease extends to claims for personal injuries caused by a hidden or concealed dangerous condition in the leased premises. *Johnson v. Scandia Associates, Inc.*, 641 N.E.2d 51, 56 (Ind.Ct.App. 1994). The Court limited its holding to cases in which the landlord is a professional in the residential apartment trade and the plaintiff is a tenant in privity of contract with the landlord. *Id.* Finally, the Court said the burden of proof to sustain the breach of implied warranty of habitability claim is "one of reasonableness in light of the surrounding circumstances." *Id.* It is not clear that this would afford Johnson any tool she did not possess in her negligence trial.

[2]. The theory sounds of *Javins*, that tenants rent a package of facilities, are ill-suited to inspect the package, rely on the landlord to maintain and repair the package, and, in this case, that the landlord created the package. *Javins v. First National Realty Corp.*, 428 F.2d 1071 (D.C.Cir.1970), *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970). *Javins* held "that a warranty of habitability, measured by the standards set out in the

Scandia responds that Johnson's real claim is tort, a matter already resolved against her by the jury. It says that a personal injury remedy founded on an imposed warranty would render landlords strictly liable. Scandia notes that this Court recently examined a similar issue and adopted tort rules for adjudicating personal injury claims in properties let for residential use. *See Childress v. Bowser*, 546 N.E.2d 1221 (Ind.1989) (covenant to repair can be implied from landlord's oral promise and is subject to duty of reasonable care, per Restatement (Second) of Torts § 357). Scandia also argues it is inequitable to expect a landlord to warrant that tenants will be free from physical injury because the landlord is not in control of the property, and thus cannot monitor or maintain it for safety once the tenant takes possession.

We begin our analysis by reviewing the common law development of the warranty of habitability in Indiana.

## II. The Warranty of Habitability in Indiana Common Law

Some describe the changes in landlord-tenant law from the late 1960's onward as a "revolution." Edward H. Rabin, *The Revolution in Residential Landlord–Tenant Law: Causes and Consequences*, 69 Cornell L.Rev. 517, 519–21 (1984). Influenced by commentary, the civil rights movement, the "war on poverty," and the exposure of harsh conditions in urban slums, some appellate courts expanded residential tenants' bundle of rights. *Id.* at 546–54.

Indiana has been part of this movement. This Court first imported a warranty of habitability into conveyances of real property when we adopted the Appellate Court's opinion in *Theis v. Heuer*, 264 Ind. 1, 280 N.E.2d 300 (1972). There, the plaintiffs sued the builder-vendor of their new home because substantial defects caused property damage, rendering the

house uninhabitable, and deprived them of the benefit of their bargain. *Id.* at 3, 280 N.E.2d at 301. The trial court granted defendants' motion to dismiss, and the plaintiffs appealed.

We overruled the doctrine of *caveat emptor*, holding that a warranty of fitness for habitation may be implied in a builder-vendor's sale of a new house to the first purchaser. We concluded that the complaint contained facts sufficient to state a claim "in that it relies on the *concept* of implied warranty of fitness of habitation...." *Id.* at 12, 280 N.E.2d at 306 (emphasis added). Still, there was little guidance in *Theis* about the theory or basis of the warranty.

Then, in *Barnes v. Mac Brown & Co., Inc.*, 264 Ind. 227, 342 N.E.2d 619 (1976), we extended the protection of the implied warranty to subsequent purchases of the house, but limited its scope to latent or hidden defects. *Id.* at 229, 342 N.E.2d at 621. Implicit in our holding was the notion that the warranty was implied-in-fact in the original parties' sales contract.

To justify abrogating the builder-vendor's privity defense, we borrowed principles from the law of strict liability in products cases. We said that a plaintiff must prove that the defect's *causation* originated in the builder-vendor, that the standard of proof is *reasonableness* in light of the circumstances, and that contractual privity between buyer and builder-seller was not required. *Id.* at 229–30, 342 N.E.2d at 621.

The Court of Appeals later added the idea of notice to this formulation. In *Wagner Constr. Co. v. Noonan*, 403 N.E.2d 1144 (Ind.Ct.App.1980), it held that a buyer not in privity must, "as a condition precedent to recovery," give the builder-vendor notice of the alleged breach of warranty and opportunity to cure the defect. *Id.* at 1150. The court borrowed this re-

[local housing code], is implied by operation of law into leases of urban dwelling units covered by [that code] and that breach of this

warranty gives rise to the usual remedies for breach of contract." *Id.* at 1072–73.

quirement from the law of sales, where it noted that a claimant must notify the seller of a breach of warranty as a substantive condition precedent to recovery. *Id.* at 1149.

The same year, the Court of Appeals held that the implied warranty of habitability does not attach merely on transfer of possession. *Great Atlantic & Pacific Tea Co. v. Wilson,* 408 N.E.2d 144 (Ind.Ct.App. 1980). In that case, the lessee was held not liable on a breach of warranty theory for injuries caused by a dangerous condition existing in the leased premises when possession was tendered back to the landlord, inasmuch as no warranty or covenant was implied in the transfer. The court distinguished *Theis* and *Barnes* by pointing out that the lessee, A & P, was neither a builder nor a vendor. *Id.* In the very least, this implied that law of contract was the source of the warranty of habitability.

Asked whether a warranty of habitability is implied in the residential leasehold contract, the Court of Appeals held in *Breezewood Management Co. v. Maltbie,* 411 N.E.2d 670 (Ind.Ct.App.1980), that a landlord could be found liable to his tenant on a breach of implied warranty, at least where there was a housing code and city inspectors had cited the landlord with multiple violations. *Id.* at 671, 675 (quoting *Boston Housing Auth. v. Hemingway,* 363 Mass. 184, 293 N.E.2d 831, 845 (1973) (approving expectancy damages in such circumstances.)).[3] The trial court had awarded damages based on the law of contract: the difference between the rents paid for

the apartment as warranted and its fair rental value in the substandard condition, compensating the tenants' for their economic loss. *Id.* at 675. The Court of Appeals affirmed these damages after a review of the evidence. *Id.* at 676.[4]

Plainly, a warranty of habitability, whether in the sale or lease of residential dwellings, has developed in the common law of Indiana, and its roots are in the law of contract.

Simply saying that a warranty of habitability is a contract term does not explain how a warranty may arise or what it implies. We thus move on to defining the substance of the warranty, how it may be implied in the leasehold agreement, and what remedies may be available to compensate for a breach.

### III. What Is a Warranty of Habitability?

■ A warranty is a promise relating to past or existing fact that incorporates a "commitment by the promisor that he will be responsible if the facts are not as manifested." 1 Samuel Williston, *A Treatise on the Law of Contracts* § 1:2, at 10 (Richard A. Lord, ed., 4th ed.1990). Habitability means reasonably fit for occupation as a dwelling. *See Webster's Third New International Dictionary* 1017 (1993). Thus, when a landlord warrants habitability, the warranty is an affirmative declaration of the apartment's fitness for habitation, that is, as a dwelling place.

---

3. In the opinion in *Breezewood,* Judge Robert Neal may have penned his most famous lines: "Thus, if a farmer rents a hovel, and a renter wants to rent it 'as is,' we will not interfere with the parties' reasonable expectations by allowing the renter to subsequently file an action for breach of certain implied warranties of habitability. One who 'with open eyes,' rents a hovel cannot later expect and sue for the Waldorf Astoria." *Breezewood,* 411 N.E.2d at 675.

4. The Court of Appeals has subsequently used contract principles in implied warranty cases. *Zimmerman v. Moore,* 441 N.E.2d 690 (Ind.Ct.

App.1982) (warranty of habitability not implied in leasehold contract when lessor is non-merchant); *Kahf v. Charleston South Apartments,* 461 N.E.2d 723 (Ind.Ct.App. 1984) (plaintiff not in privity with defendant lacks standing to press breach of warranty claim), *trans. denied; Hodge v. Nor–Cen, Inc.,* 527 N.E.2d 1157 (Ind.Ct.App.1988) (avoiding determination of whether personal injury claim grounded on breach of warranty theory presents cognizable claim), *trans. denied; Dawson v. Long,* 546 N.E.2d 1265 (Ind.Ct. App.1989) (declining to extend implied warranty of habitability to guest), *trans. denied.*

Habitability is not the same as no risk of harm. Conditions which might cause injury can flow from many actors besides the lessor—builders, independent contractors, or even negligence by visitors. An apartment can thus provide adequate shelter and amenities, as promised, and still be a place which presents some risk.[5] A case of negligence in leaseholds is subject to tort principles. *See Childress,* 546 N.E.2d 1221 (finding binding covenant to repair from landlord's admonition at inception of oral lease to "do nothing" to premises and his specific promise to make particular repair); Restatement (Second) of Torts §§ 355–62 (1965) (describing various rules under which landlords should be liable in tort to tenants).

Tort law imposes on all persons who engage in risk-creating activities the duty of reasonable care under the circumstances.[6] Tort liability is involuntary, and it is balanced between the parties according to each's comparative fault. *See* Ind. Code Ann. §§ 34–51–2–1, –19 (West Supp. 1999).

By contrast, when a party breaches his legal obligation under a contract, liability is strict.[7] Contracts are pri-vate, voluntary allocations by which two or more parties distribute specific entitlements and obligations.[8]

When a landlord enters a lease agreement with her tenant, she voluntarily confers certain rights upon the tenant, such as possession and quiet enjoyment for a specific term. Restatement (Second) of Property (Landlord and Tenant) §§ 1.2, 4.3 (1977). She does this in consideration of the tenant's promise to pay rent, not to waste the property, not to use it for illegal purposes, and not to "holdover" beyond the term. *See id.* §§ 12.1, 12.2, 12.3, 12.5. The landlord agrees to this legal relationship after balancing the costs and benefits, and the same is true for the tenant. The parties may grant additional rights or assume special obligations, but each has just one duty under the contract—to perform as promised.

Defining a warranty of habitability broadly as a tenant's right to be free from injury might have many effects. A broad definition might cause landlords to increase maintenance of properties, at least where doing so would still produce an economic return. It would undoubtedly prompt landlords to purchase additional

5. *See, e.g., Armstrong v. Cione,* 6 Haw.App. 652, 736 P.2d 440, 445–446 (1987), *aff'd,* 69 Haw. 176, 738 P.2d 79 (1987) (jury verdicts finding negligence but not breach of warranty of habitability affirmed, because unsafe condition did not render apartment uninhabitable).

6. *See generally* Restatement (Second) of Torts § 281 cmt. e (1965) ("[T]he duty established by law to refrain from the negligent conduct is established in order to protect the other from the risk of having his interest invaded by harm....").

7. As Judge Posner writes, "[L]iability for breach of contract is, prima facie, strict liability.... The promisor promises in effect either to perform or to compensate the promisee for the cost of nonperformance; and one who voluntarily assumes a risk will not be relieved of the consequences if the risk materializes." *Patton v. Mid–Continent Systems, Inc.,* 841 F.2d 742, 750 (7th Cir.1988).

8. *See generally* 1 Arthur L. Corbin, Corbin on Contracts § 1.2–1.3 (Joseph M. Perillo, ed.,

rev. ed.1993) (contract expresses the legal relation between parties manifested by their assent and which organized society recognizes as giving remedies to the holder of a right against the bearer of a legal obligation). *See also Southern, Sch. Bldgs., Inc. v. Loew Electric, Inc.,* 407 N.E.2d 240, 244 (Ind.Ct.App. 1980) ("The parties to a contract have the right to define their mutual rights and obligations as they see fit."). Preeminent contract theorist Professor Farnsworth understands the voluntary allocation of rights and obligations this way:

> Exchange is the mainspring of any economic system that relies as heavily on free enterprise as does ours. Such a system allocates resources largely by direct bilateral exchanges arranged by bargaining between individuals. In these exchanges each gives something to the other and receives in return something from the other.

1 E. Allan Farnsworth, Farnsworth on Contracts § 1.2, at 6–7 (1990).

insurance, spreading the risk of harm more broadly.[9]

Landlords would, of course, attempt to pass along increased insurance costs to tenants by raising rents. Increased leasing costs might also cause conversion of some properties from residential uses and outright abandonment of others. This would shrink the supply of affordable housing, which could have potentially adverse social effects and would, of course, be borne by society's poorest renters.[10]

Potential negative outcomes also could flow from a warranty rule on injury— because high standards of upkeep could be discouraged by shifting the risk of liability, and thus economic incentive, from the landlord to the insurer. A contractual right could diminish a tenant's incentive to report or repair defects by eliminating the economic risk of contributory negligence. All of these outcomes would increase the risk of harm to tenants, residents, and guests.

■ In light of these considerations, we conclude that a warranty of habitability is best thought of along the lines of *Breezewood:* a landlord's promise to convey to a tenant an apartment suitable for living, and breach of which promise occurs when a landlord fails to tender a suitable apartment.

## IV. When Is a Warranty of Habitability Imposed by Law on Residential Leases?

The common law of contracts has its starting point in free bargaining between the parties. *See Mutual Sec. Life Ins. Co. v. Fidelity & Deposit Co.,* 659 N.E.2d 1096, 1100 (Ind.Ct.App.1995) ("The law generally allows competent persons the utmost liberty of contracting, and their contracts, when entered into freely and voluntarily, are enforced by the courts."), *trans. denied.* Imposition of an unbargained-for legal obligation on a contract thus derogates the common law. For this reason, the law must state with fair specificity the warranty being imposed and the class of transactions covered by it. *See, e.g.,* Ind. Code Ann. §§ 26–1–2–314, –315 (West 1995) (warranties of merchantability and fitness for a particular purpose imposed by statute on contracts governing transactions for the sale of goods).

■ Habitability is an objective factual determination which may be codified, but is not necessarily prescribed by a housing code. A community's adoption of a building or housing code is evidence of its conception of habitability standards for dwellings in that locale. These codes vary enormously in their prescriptions; absent explicit statutory or regulatory language imposing on landlords the obligation to warrant a codified standard of habitability in property rented as a residence, a housing code does not impose a warranty on the residential leasehold transaction.

■ Even though an implied warranty of habitability is not *imposed by law* on every residential lease contract, it may be *implied in fact* in the agreement between landlord and tenant. Contracts and covenants implied in fact arise from the

---

9. Given the widespread use of insurance, this outcome might be "Pareto superior." Pareto optimality is a state in which any change that benefits one must cause another to lose. *See* Guido Calabresi, *The Pointlessness of Pareto: Carrying Coase Further,* 100 Yale L.J. 1211, 1215 (1991). Accordingly, Pareto superior moves are "win-win" changes because wealth is maximized for one without causing another to lose. *See id.* at 1216. As then-Dean Calabresi pointed out, Paretian thinking may be a useful guide to understanding efficiency, but it fails to consider distributional and moral conditions antecedent to efficiency. *See id.* at 1216–17.

10. *See, e.g.,* Werner Z. Hirsch et al., *Regression Analysis of the Effects of Habitability Laws Upon Rent: An Empirical Observation on the Ackerman–Komesar Debate,* 63 Cal. L.Rev. 1098 (1975). *But cf.* Edward H. Rabin, *The Revolution in Residential Landlord–Tenant Law: Causes and Consequences,* 69 Cornell L.Rev. 517, 578 (1984) (effect of habitability laws on housing supply are indeterminate).

course of dealing between the parties and may be evidenced by acts done in the course of performance or by ordinary practices in the trade.[11] This seems the best way of viewing *Breezewood.* The warranty extended by the landlord was implied in fact from the parties' course of dealing, which included dealings related to the Bloomington Housing Code. The Code thus provided evidence for determining that the landlord breached his promise.[12]

Johnson does not identify any state or local law as the source of the warranty she pleads as implied in her contract. Moreover, she has not identified any facts demonstrating that a warranty of habitability was either express or implied-in-fact in the agreement.

## V. Implied Warranty of Habitability and Available Remedies

■ When a landlord warrants his property to be suitable for living and then breaches that promise by conveying an unsuitable apartment, the tenant's remedy may take several forms, including conveyance of a suitable property, rescission and reformation of the agreement while the tenant retains possession, recision of the contract, or damages at law. The thread tying the remedy to the breach is the nature of the promise: at an agreed rental price, the landlord will convey to the tenant an apartment he warrants as suitable for living.

■ Consequential damages may be awarded on a breach of contract claim when the non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made. *Western Union Telegraph Co. v. Biggerstaff,* 177 Ind. 168, 97 N.E. 531 (1912). This follows the rule of *Hadley v. Baxendale,* 156 Eng. Rep. 145 (1854), and generally limits consequential damages to reasonably foreseeable economic losses. Accordingly, recovery for personal injury on a contract claim is allowable only when the particular injury was within the parties' contemplation during contract formation. *See Strong v. Commercial Carpet Co.,* 163 Ind.App. 145, 152–53, 322 N.E.2d 387, 391–92 (1975), *reh'g den. in part,* 163 Ind.App. 145, 324 N.E.2d 834. Thus, to claim consequential damages the tenant must show the parties intended to compensate for personal injury losses caused by the apartment's unfitness. The tenant may prove the promise to compensate personal injury by showing its expression as a contract term or by pointing to evidence showing it to be implied in the agreement.

## VI. Has Johnson Stated a Claim?

The trial court dismissed Johnson's breach of implied warranty claim for failing to state a claim upon which relief could be granted. Ind.Trial Rule 12(B)(6).

■ In the most favorable light, Johnson complains that her apartment was not suitable for living because its fixtures unexpectedly released an electric current and, second, that her injuries were foreseeably caused by the breaching condition. She does not allege whether the defect was

11. *See McCart v. Chief Executive Officer In Charge, Indep. Fed. Credit Union,* 652 N.E.2d 80, 85 (Ind.Ct.App.1995) (" 'An implied contract [is] one wherein an agreement is arrived at by the acts and conduct of the parties ....' " (quoting *Retter v. Retter,* 110 Ind.App. 659, 663–64, 40 N.E.2d 385, 386 (1942))).

12. The court remarked that the lessees "had a reasonable expectation their basic needs would be met." *Breezewood,* 411 N.E.2d at 675. The foundation of this expectation was based on the parties' negotiations as well as the existence of the housing code, which was brought to the attention of the lessees only after inspection by enforcement officers had been initiated by unnamed third parties. *Id.* at 671. The landlord promised corrective action after being cited for numerous violations, but he did nothing and the lessees complained further. At most, the lessees' expectation that conditions would be made to comply with the housing code arose from the landlord's post-inspection promise to repair. *Id.* As the *Breezewood* court noted, landlords and tenants can negotiate an agreement waiving compliance with a housing code. *See id.* at 675 n. 2.

present at the time of entry or arose after taking possession, nor does she have any contention about giving Scandia notice of the defect.

Johnson says her leasehold contract is governed by a writing, so we look within the document to see if it extended her a warranty. There is no mention of a warranty of habitability. Because the writing does not show that Scandia expressly warranted the apartment's habitability, Johnson's assertion can mean just one thing: Scandia Associates impliedly warranted the habitability of Johnson's apartment. Johnson pleads no facts which, if true, tend to show that the agreement formed with Scandia gives a warranty of habitability. Her failure to plead a factual basis showing that Scandia actually extended the warranty as part of the agreement results in a failure to state a valid claim that the warranty was breached.[13]

## VII. Conclusion

 Indiana's common law of contract governing the landlord-tenant relationship has developed a warranty of habitability. The warranty is not universally imposed by law, but derives from the agreement between the tenant and the landlord and may be express or implied. The existence of an implied warranty may be proven through evidence of the parties' course of dealing or performance and by evidence of ordinary practices in the trade. Where the warranty is express, consequential damages for injury to the person may be available as a remedy. Where the warranty is implied-in-fact, however, consequential damages may not be awarded because personal injury is outside the parties' contemplation. Johnson's complaint does not aver facts tending to show that Scandia warranted the apartment's habitability or that her injury was reasonably

foreseeable within a warranty of habitability.

For these reasons, we affirm the trial court.

SULLIVAN, and SELBY, JJ., concur.

BOEHM, J., concurs in result, agreeing with Justice DICKSON that the law implies a warranty of habitability, but concluding that the remedies for breach of that warranty are essentially along the lines indicated by Restatement (Second) of Property § 10.2, and that recovery for personal injuries requires a showing of negligence.

DICKSON, J., dissents, believing that an implied warranty of habitability in leased residential premises should be recognized as a matter of law.

---

**13.** Moreover, because Johnson's claim is based on an implied warranty theory, the only way she could receive the relief she requests would be through consequential damages. Inasmuch as consequential damages for phys-

ical injury are not available on a claim for breach of an *implied* warranty of habitability, Johnson cannot state a claim entitling her to relief.