BRIAN MCKENNA *vs.* BERNARD BEGIN.

Franklin.    January 20, 1975. — April 4, 1975.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Landlord and Tenant,* Habitability.   *Damages,* Breach of warranty.

Where a tenant brought a bill in equity against a landlord seeking ap-
pointment of a receiver to collect the rent and apply it to the re-
pair of his apartment, it was within the discretion of the judge to
deny the equitable relief and award damages to the tenant in light
of the general prayer for relief in the petition. [168-169]

In awarding damages to a tenant based upon a landlord's breach of
an implied warranty of habitability the proper measure of damages
was the difference between the fair rental value of the premises as
warranted to be habitable, as evidenced by the rent paid by the ten-
ant, and the fair rental value of the apartment in its defective con-
dition, even where many of the defects were patent at the inception
of the tenancy. [169-171]

In awarding damages to a tenant based upon a landlord's breach of an
implied warranty of habitability, it was error to compute the dam-
ages from the date the landlord received a housing inspection report
from the local board of health; damages should have been computed
from the inception of the tenancy, if it were shown that the defec-
tive conditions existed at that time, or, from the time the landlord
first knew or was notified of the conditions, if they arose during the
tenancy. [171-174]

BILL IN EQUITY filed in the Superior Court on March 8,
1973.

The suit was heard by *Moriarty,* J.

*Stephen J. Schwartz* for the plaintiff.

KEVILLE, J.   This is a bill in equity brought by a tenant
against his landlord pursuant to G. L. c. 111, § 127H, as
amended by St. 1972, c. 201, seeking the appointment of a
receiver to collect the rent and apply it to the repair of his
apartment to make it fit for his habitation. The Superior

Court judge ordered the tenant to vacate the premises, which had been condemned by the local board of health, and ordered that the landlord refrain from letting the premises unless board of health permission should first be obtained. In addition, the judge awarded damages to the tenant based upon the landlord's breach of an implied warranty of habitability. See *Boston Housing Authy.* v. *Hemingway,* 363 Mass. 184, 199 (1973).[1] The tenant now contends that since he did not specifically pray for damages in his petition and since damages are inconsistent with the relief sought, the judge's award of damages was an abuse of discretion. In the alternative, he contends that the judge failed to apply correctly the measure of damages exposited in the *Hemingway* case.

It was within the judge's discretion to award damages to the tenant in light of the general prayer for relief contained in his petition. *Winslow* v. *Nayson,* 113 Mass. 411, 421-422 (1873). *George* v. *Coolidge Bank & Trust Co.* 360 Mass. 635, 641 (1971).

We examine the judge's computation of damages to determine whether it was correct. He concluded that damages based upon the landlord's breach of an implied warranty of habitability should run from January 18, 1973, when the landlord received a housing inspection report from the local board of health. The evidence reveals that the landlord knew of the conditions in the apartment at the inception of the tenancy and that the tenant had complained to him about these conditions for several months before resorting

---

[1] There the court stated, "[W]e hold that in a rental of any premises for dwelling purposes, under a written or oral lease, for a specified time or at will, there is an implied warranty that the premises are fit for human occupation. 'This means that at the inception of the rental there are no latent [or patent] defects in facilities vital to the use of the premises for residential purposes and that these essential facilities will remain during the entire term in a condition which makes the property livable.' *Kline* v. *Burns,* 111 N. H. 87, 92 [1971]. This warranty (in so far as it is based on the State Sanitary Code and local health regulations) cannot be waived by any provision in the lease or rental agreement." See Ann. Surv. of Mass. Law (1973) § 1.9.

to governmental channels of redress. In computing the amount of damages, the judge reasoned that since many of the defects were patent, the weekly rent paid by the tenant represented the value of the apartment in its defective condition. He subtracted this figure from the weekly rent paid by tenants in other apartments in the building, an amount which he took to represent the fair rental value of the tenant's apartment, if in habitable condition. The difference between the two amounts was the damage deemed by the judge to be recoverable for each week from the receipt of the housing inspection report to the entry of the final decree.

In *Boston Housing Authy.* v. *Hemingway,* 363 Mass. 184 (1973), a summary process action was brought against tenants who had been withholding rent. Because the tenants had not given written notice of defects to the landlord as required by rent withholding procedures under G. L. c. 239, § 8A, as appearing in St. 1967, c. 420, § 1, they could not resist eviction. However, the court held that the landlord's breach of an implied warranty of habitability afforded the tenants an affirmative defense to the landlord's claim for rents withheld. "The tenants' claim for damages based on this breach by the landlord should be limited to the period of time that each apartment remained uninhabitable after the landlord had notice of the defects. The measure of damages would be the difference between the value of each apartment as warranted and the rental value of each apartment in its defective condition." *Boston Housing Authy.* v. *Hemingway,* 363 Mass. at 203. See *Id.* at 203, n. 21. The court stated that the rent agreed upon may be evidence of the value of the dwelling as warranted. *Id.* at 203.

We first discuss whether the guidelines furnished by the *Hemingway* case permit the determination of the judge that the rent paid by the tenant represented the value of the apartment in its defective condition. We conclude that they do not. Recognition of the implied warranty of habitability obliges the landlord to furnish habitable premises regardless of the amount of rent charged and he may not

relieve himself of this obligation by accepting reduced rent for defective premises. Therefore, as the *Hemingway* case suggests, the rent agreed upon is evidence of the value of the premises as habitable, and may not be taken by the judge as evidence of the value of the premises in a defective condition. See *Grennan* v. *Murray-Miller Co.* 244 Mass. 336, 339 (1923); *Berzito* v. *Gambino*, 63 N. J. 460, 469 (1973); *Foisy* v. *Wyman*, 83 Wash. 2d 22, 34 (1973). Under the formula applied by the judge, a rental of defective premises would be tantamount to a waiver of the statutory provisions for enforcement of the State Sanitary Code and the landlord's implied obligation to let and maintain the premises in a habitable condition. Such an agreement would be against public policy and void (G. L. c. 111, § 127K, inserted by St. 1968, c. 404, § 2) and would violate the interdiction against waiver of an implied warranty of habitability (at least insofar as it is based on the State Sanitary Code and local health regulations). *Hemingway* case, *supra*, at 199. See *Foisy* v. *Wyman*, 83 Wash. 2d 22, 28-30 (1973).

We further conclude that the judge was incorrect in basing the value of this tenant's apartment as warranted to be habitable upon the rent paid by tenants of other apartments in the building. As stated above, the judge should have taken the rent paid by this tenant as evidence of the value of his apartment as warranted to be habitable without considering what others paid for other premises.

While the *Hemingway* case does not furnish precise guidelines for the valuation of defective premises, it is apparent that consideration is to be given to various factors including, but not limited to, the nature, duration and seriousness of defects and whether they may endanger or impair the health, safety or well being of the occupants. *Berzito* v. *Gambino, supra*, at 469-470. While not every defect gives rise to diminution in rental value, it is possible, in a given instance, for substantial defects to reduce the fair rental value of the premises to zero.

It also appears that the judge erred in holding that damages ran from the time when the landlord received a hous-

ing inspection report from the local board of health. The *Hemingway* case makes clear that when notice to the landlord is required, it need not be in the form of a housing inspection report. While noting that a housing inspection report constitutes "*evidence* of a material breach and the landlord's notice of that breach" (emphasis supplied) (*Hemingway* case, *supra,* at 200, n. 15), the court recognized that notice to the landlord could be oral. *Id.* at 201, 202-203. See *Diamond Housing Corp.* v. *Robinson,* 257 A. 2d 492, 494 (D. C. App. 1969) ; *Javins* v. *First Natl. Realty Corp.* 428 F. 2d 1071, 1082, n. 62 (D. C. Cir. 1970) ; *Foisy* v. *Wyman,* 83 Wash. 2d 22, 31, n. 1 (1973). It is readily apparent that if a housing inspection report were the sole means of notice, a landlord could postpone action to remedy defective conditions until his tenant sought a housing inspection. The landlord could thereby reduce his liability for breach of the implied warranty of habitability.

While the *Hemingway* case states only that damages run during the period that the dwelling remained uninhabitable "after the landlord had notice of the defects" (*Hemingway* case, *supra,* at 203), we draw from that opinion support for our conclusion that damages for breach of an implied warranty of habitability run from the time that the landlord either knows or receives notice of the defective condition of the premises, whichever occurs first. The view that, in these circumstances, knowledge on the landlord's part is the equivalent of notice has been reenforced by the Legislature.

Following the *Hemingway* case and after the events giving rise to the instant litigation, but before the trial court's decision, the Legislature determined that a tenant need not give written notice to the landlord of defective conditions in the premises where he can show that the landlord "*knew* of conditions in the premises" (emphasis supplied), that knowledge of them existed before he fell into arrears in his rent, and that the landlord has not taken reasonable steps to remedy the defective conditions. G. L. c. 239, § 8A, as amended through St. 1973, c. 471, approved June 29, 1973,

effective ninety days thereafter.[2] See G. L. c. 106, § 1-201 (25).[3]

Additionally, in granting to the tenant the right to remain in possession, while withholding rent from the landlord from the time the latter learns of the defective conditions, the Leglislature adopted by implication the interdependent covenants given recognition in the *Hemingway* case that "the tenant's obligation to pay rent is predicated on the landlord's obligation to *deliver* and maintain the premises in habitable condition" (emphasis supplied). *Hemingway* case, 363 Mass. at 198. See *Diamond Housing Corp.* v. *Robinson*, 257 A. 2d 492, 494 (D. C. App. 1969); *Davis, Inc.* v. *Slade*, 271 A. 2d 412, 416 (D. C. App. 1970); *Samuelson* v. *Quinones*, 119 N. J. Super. 338, 340-343 (1972); *Berzito* v. *Gambino*, 63 N. J. 460, 469-470 (1973); *Foisy* v. *Wyman*, 83 Wash. 2d 22, 28-30, 34 (1973).

Judicial recognition of an implied warranty of habitability on the part of landlords, coupled with the emergence of strengthened statutory remedies,[4] marks a strong underlying public policy to curtail substandard rental housing. And where, as the evidence may reveal in this case, the premises are uninhabitable from the inception of the tenancy, damages should run from that time without the neces-

---

[2] G. L. c. 239, § 8A states in pertinent part: "In a proceeding under this chapter, proof by the person occupying the premises that the person to whom he customarily paid his rent or that the owner or his agents, servants, or employees knew of conditions in the premises in violation of the standards of fitness for human habitation established under the state sanitary code or any ordinance, by-law, rule or regulation which endanger or materially impair the health or safety of persons occupying the premises shall satisfy and be the equivalent of the notice requirement of clause (1) of the first paragraph of this section, provided that the conditions and the knowledge of them existed before the person occupying the premises was in arrears in his rent and that the owner or his agents, servants, or employees had not taken reasonable steps to remedy such conditions."

[3] G. L. c. 106, § 1-201 (25), states in part, "A person has 'notice' of a fact when (a) he has actual knowledge of it."

[4] G. L. c. 111, §§ 127A-127F, 127H, 127K and 127L; G. L. c. 239, § 8A, as amended through St. 1973, c. 471.

sity of a showing that the landlord knew or had notice of defects affecting their habitability. For, as noted earlier in this opinion, the *Hemingway* case holds that the implied warranty means that at the inception of the rental there are no defects, latent or patent, vital to the use of the premises for residential purposes and that the property will remain in a livable condition throughout the tenancy. *Hemingway* case, *supra*, at 199.

The second paragraph of the decree awarding damages to the tenant is struck and the case is remanded to the Superior Court for further hearing including, if necessary, the reception of further evidence on the question of damages. For the guidance of the trial court upon rehearing, damages are to be based upon the difference between the fair rental value of the premises as warranted to be habitable and the fair rental value of the premises in their defective condition. If it is shown that the defective conditions existed at the inception of the tenancy, damages shall be computed from that time. If the conditions are shown to have arisen during the tenancy, damages are to be computed from the time the landlord first knew or was notified of their existence. In either case, damages shall run to the date on which the tenant ceased to occupy the premises or to the entry of the final decree, whichever came first. In any event, the tenant shall not be awarded damages in excess of the rent actually paid by him during the period of his occupancy of the premises.

*So ordered.*