JOYCE ABRAM, Plaintiff-Appellant, v. LARRY LITMAN *et al.*, Defendants-Appellees.

Fourth District   No. 4—86—0148

Opinion filed December 8, 1986.

Greaves, Lerner & Kirchner and Thomas C. Hughes, Jr., both of Champaign, for appellant.

Paul R. Wilson, Jr., of Rantoul, for appellees.

JUSTICE WEBBER delivered the opinion of the court:

Plaintiff appeals from an order of the circuit court of Champaign County granting defendants' motion to dismiss the complaint. We now affirm.

On October 22, 1985, plaintiff, Joyce Abram, filed a complaint in the circuit court of Champaign County naming as defendants Larry and Gail Litman. The complaint alleged that plaintiff resided at property owned by, and leased to her by, defendants. The complaint alleged further that an implied warranty of habitability arose under an oral lease entered into by the parties. The complaint alleged that the warranty had been breached when, on October 22, 1983, a fire occurred at the premises. Plaintiff alleged that the fire had been caused by faulty wiring which had rendered the premises uninhabitable and unreasonably dangerous. Plaintiff sought damages for the value of personal property which had been damaged or destroyed by the fire.

On December 3, 1985, defendants filed a motion to dismiss the complaint pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 2—615, 2—619). The motion stated that plaintiff failed to attach a copy of the written lease to the complaint, that the complaint was untimely filed, that the complaint contained no allegation that defendants had notice of the alleged defects or dangerous conditions, that defendants had received no such notice, and that plaintiff waived her objections to any defects or dangerous conditions by signing a lease acknowledging that the premises were habitable.

Attached to the motion was a copy of a written lease entered into between the parties and affidavits completed by both defendants. The affidavits stated that defendants never received notice from plaintiff "that the premises were uninhabitable, unreasonably dangerous, or that the wiring to the furnace contained in said residence was stapled, or that there was any defective or dangerous condition on the premises."

On February 7, 1986, the court entered an order dismissing the complaint. The court's order stated that under *Glasoe v. Trinkle* (1985), 107 Ill. 2d 1, 479 N.E.2d 915, a tenant seeking to recover for a landlord's breach of the implied warranty of habitability must plead and prove that the tenant gave notice of the alleged defects to the

landlord. Because plaintiff failed to plead that she gave such notice, and because defendants' uncontradicted affidavits stated that no such notice was given, the court dismissed the complaint pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(9).)

On March 5, 1986, plaintiff filed a timely notice of appeal. On appeal plaintiff argues that the court erred in determining that she was required to plead and prove that she gave notice of the alleged defects to defendants. Defendants argue that the court's reasoning was sound and, in any event, that the implied warranty of habitability cannot serve as a basis of recovery for property damage. We begin with a brief examination of the development of the implied warranty of habitability in residential leases.

■ In *Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 280 N.E.2d 208, the Supreme Court of Illinois held that the implied warranty of habitability applied to leases, both oral and written, of multiple-unit dwellings. In *Jack Spring* the court stated that the warranty was fulfilled by substantial compliance with the pertinent provisions of the applicable building code. Subsequently several districts of the appellate court of Illinois interpreted the court's statement in *Jack Spring* to mean that the implied warranty of habitability is only fulfilled by substantial compliance with a building code. (See, *e.g., Auburn v. Amoco Oil Co.* (1982), 106 Ill. App. 3d 60, 435 N.E.2d 780.) In *Glasoe* our supreme court clarified this confusion by holding "that the implied warranty of habitability applies to all leases of residential real estate regardless of the existence of housing or building codes." (*Glasoe v. Trinkle* (1985), 107 Ill. 2d 1, 10, 479 N.E.2d 915, 918.) The *Glasoe* court continued by examining the scope of the implied warranty of habitability. In so doing, the court stated:

> "As did the Pennsylvania court, we decline to establish rigid standards for determining habitability and its breach. (See *Pugh v. Holmes* (1979), 486 Pa. 272, 290-91, 405 A.2d 897, 906.) However, we think the guidelines above stated, which have been enunciated in other jurisdictions, will be helpful to the fact finder in determining the extent of the warranty of habitability and whether there has been a breach thereof in a particular case. *In addition to the guidelines stated, there, of course, must be notice of the alleged defects given by the tenant to the landlord and the landlord must have had a reasonable time within which to correct the alleged deficiencies.* See *Detling v. Edelbrock* (Mo. 1984), 671 S.W.2d 265, 270; *Mease v. Fox* (Iowa 1972), 200 N.W.2d 792, 797." (Emphasis added.) (107 Ill. 2d 1, 14, 479

N.E.2d 915, 920.)

The trial court relied on the above-quoted statement in determining that plaintiff was required to plead and prove that she gave notice of the alleged defects to defendants.

Plaintiff argues that the above-quoted statement is mere *dicta* and that we should follow our holding in *Jarrell v. Hartman* (1977), 48 Ill. App. 3d 985, 363 N.E.2d 626. In *Jarrell* we rejected the argument that a tenant seeking to establish a breach of the implied warranty of habitability is first required to give the landlord notice of the defect and an opportunity to repair. Our principle reason for rejecting defendants' argument was that no such requirement had been discussed in *Jack Spring*. This question was resolved in *Glasoe*.

In our opinion the trial court interpreted the statement of the supreme court in *Glasoe* concerning notice too broadly. *Glasoe* involved patent defects. Even in the case of such defects the court laid down no precise rule as to the nature of the required notice, only that some notice must be given. The court was not called upon to decide the matter of notice in the context of latent defects of the type involved in the instant case. If such defects were not apparent or discoverable by either the landlord or the tenant until after the damage had occurred, it is at once apparent that notice of them would be logically impossible to give. We find that *Glasoe* is factually distinguishable from the instant case.

A short discussion of how other jurisdictions have treated the question of notice is in order.

In order to assert a claim for a landlord's breach of an implied warranty of habitability, a tenant must show that he gave notice of the alleged defect to the landlord or that the landlord had knowledge of the alleged defect. (*George Washington University v. Weintraub* (D.C. 1983), 458 A.2d 43; *Old Town Development Co. v. Langford* (Ind. App. 1976), 349 N.E.2d 744, *appeal dismissed* (1977), 267 Ind. 176, 369 N.E.2d 404; *Mease v. Fox* (Iowa 1972), 200 N.W.2d 791; *McKenna v. Begin* (1975), 3 Mass. App. Ct. 168, 325 N.E.2d 587; *Detling v. Edelbrock* (Mo. 1984), 671 S.W.2d 265 (stating only that notice is required); *Henderson v. W. C. Haas Realty Management, Inc.* (Mo. App. 1977), 561 S.W.2d 382; *Pugh v. Holmes* (1979), 486 Pa. 272, 405 A.2d 897 (stating only that notice is required).) Some jurisdictions have stated that a landlord's knowledge may be either actual knowledge or constructive knowledge. (See, *e.g., George Washington University v. Weintraub* (D.C. 1983), 458 A.2d 43.) As the supreme court noted in *Glasoe,* cases such as these from other jurisdictions provide guidance in determining the extent of the implied warranty of habit-

ability and in establishing the scope of the notice requirement.

We believe that one of the soundest approaches was that taken in *Old Town Development*. In *Old Town Development* the court held that the notice requirement may be satisfied in various ways depending upon the facts and circumstances of the case. Actual notice of the alleged defect given to the landlord by the tenant would always be sufficient. In addition, actual knowledge of the alleged defect on the part of the landlord would also be sufficient. In some instances the landlord could be charged with constructive knowledge of the alleged defect. For example, where the alleged defect is a latent defect and the landlord was also the builder of the premises, the landlord could properly be charged with constructive knowledge of the alleged defect. (*Old Town Development Co. v. Langford* (Ind. App. 1976), 349 N.E.2d 744.) However, defendants herein could not be charged with constructive knowledge of the faulty wiring since plaintiff did not allege that defendants were the builders of the premises leased to plaintiff. See *Henderson v. W. C. Haas Realty Management, Inc.* (Mo. App. 1977), 561 S.W.2d 382 (noting that liability could not be imposed on a non-builder landlord for a breach of the implied warranty of habitability which allegedly resulted from faulty wiring which had caused a fire on the premises).

Because the instant case concerns a latent defect about which the tenant knew nothing and because there is no allegation in the pleadings upon which the landlord could be charged with constructive notice of the defect, we find that the trial court properly dismissed the complaint. While its reliance upon the broad language in *Glasoe* was perhaps misplaced, its result was correct. As we have pointed out, the instant case differs from *Glasoe,* which was concerned with patent defects. An additional reason for the proper dismissal of the complaint is that the warranty of habitability cannot serve as a basis for recovery of property damage. *Auburn v. Amoco Oil Co.* (1982), 106 Ill. App. 3d 60, 435 N.E.2d 780.

In *Auburn* the plaintiffs' complaint alleged that the defendant landlords breached the implied warranty of habitability by providing in the leased house a furnace which was neither in working order nor reasonably safe for its intended purpose. The complaint alleged further that as a result of the landlord's breach, an explosion occurred destroying the house and causing the plaintiffs to suffer personal injury and property damage. The complaint sought damages. Stating that no cause of action exists for personal injuries resulting from a breach of the implied warranty of habitability, the trial court dismissed the complaint. On appeal we affirmed, holding that the war-

ranty of habitability implied in a lease of a dwelling does not give rise to a cause of action for personal injuries or property damage. We noted that although the implied warranty of habitability may be used as a sword as well as a shield and that an independent action for a landlord's breach of the warranty may stand, such claims are "for a deterioration in the benefits from the lease rather than for personal injuries or property damage arising from a catastrophe." (106 Ill. App. 3d 60, 63, 435 N.E.2d 780, 782.) While we are aware of cases in other jurisdictions in which a tenant has been able to recover damages for personal injuries or other damages for a landlord's breach of the implied warranty (see, *e.g., Boudreau v. General Electric Co.* (1981), 2 Haw. App. 10, 625 P.2d 384, 34 A.L.R.4th 86 (1984) (allowing recovery of damages for personal injuries); *Roeder v. Nolan* (Iowa 1982), 321 N.W.2d 1 (allowing recovery of incidental and consequential damages); *Simon v. Solomon* (1982), 385 Mass. 91, 431 N.E.2d 556 (allowing recovery of damages for personal injuries); *Dorgan v. Loukas* (1985), 19 Mass. App. 959, 473 N.E.2d 1151 (allowing recovery of damages for emotional distress); *Detling* (allowing recovery of damages for impaired enjoyment of premises and consequential damages); *Hilder v. St. Peter* (1984), 144 Vt. 150, 478 A.2d 202 (allowing recovery of damages for a tenant's discomfort and annoyance and punitive damages)), we believe *Auburn* sets forth a clear precedent which must be followed in this case. Because the complaint herein seeks recovery of damages for property damage, the court below properly dismissed the action.

Plaintiff argues that *Auburn* was overruled, *sub silentio,* by *Glasoe.* In *Glasoe* the tenants had filed a counterclaim seeking damages for the difference between the amount of rent they paid and the actual rental value of the leased premises based upon the landlord's breach of the implied warranty of habitability, for the costs of replacing property which had been damaged by leaks in the leased premises, and for increased utility bills. The trial court dismissed the counterclaim, noting that an implied warranty of habitability could not arise absent a building code. As already mentioned, our supreme court held otherwise. The supreme court reversed the trial court's order and remanded the counterclaim for further proceedings. Plaintiff argues that in remanding plaintiff's claim for damages for the costs of replacing damaged property, the supreme court impliedly recognized that a tenant can recover for property damage. However, we note first that the supreme court did not specifically address the issue of recovery of damages for property damage resulting from a landlord's breach of the implied warranty of habitability. We note second that the supreme

court in *Glasoe* discussed, at length, the amount of damages to be awarded on remand if the court on remand determines that a breach occurred, and nowhere during that discussion did the supreme court mention damages for property damage or personal injuries. In fact, the supreme court limited its discussion to the "difference in value" method and the "percentage reduction in use" method for calculating damages. For these reasons, we believe that the supreme court in *Glasoe* did not overrule our decision in *Auburn*.

The judgment of the circuit court of Champaign County is affirmed.

Affirmed.

GREEN and MORTHLAND, JJ., concur.