Linda K. SCHUMAN, Appellant–
Plaintiff,

v.

Ernest M. KOBETS & Susan G. Kobets
d/b/a Lynnleigh Apartments,
Appellees–Defendants.

No. 49A05–0103–CV–91.

Court of Appeals of Indiana.

Jan. 15, 2002.

Timothy E. Peterson, D. Robert Webster, Bamberger & Feibleman, Indianapolis, IN, for Appellant.

Nana Quay–Smith, Karl L. Mulvaney, Daniel R. Fagan, James P. Strenski, Bingham McHale LLP, Indianapolis, IN, for Appellee.

## OPINION

FRIEDLANDER, Judge.

Linda Schuman appeals the trial court's grant of a motion for partial judgment on the pleadings in favor of Earnest and Susan Kobets d/b/a Lynnleigh Apartments. Schuman presents several issues for review which we consolidate and restate into the following issue: Did the trial court err when it granted the Kobetses' motion for partial judgment on the pleadings?

We affirm.

The facts most favorable to the nonmovant reveal that Linda Schuman rented an apartment from Ernest and Susan Kobets d/b/a Lynnleigh Apartments from April 1989 to November 1993 under an oral month-to-month lease. In June 1990, pigeons began roosting in a broken window casing of the dining room window and in the wall next to the bathroom window of Schuman's apartment. Despite repeated requests, the Kobetses failed to make the needed repairs. In July of the same year, Schuman began suffering from enlarged lymph nodes and other maladies, including a cough and fever.

In August 1990, Schuman was diagnosed with histoplasmosis.[1] Schuman reported her diagnosis to the Kobetses, after which the Kobetses proceeded to remove the pigeons and repair the windows and walls. Schuman then sought reimbursement for her doctor bills from her landlords. The Kobetses ignored Schuman's demands for payment. Apparently, Schuman let the matter rest without initiating litigation. Schuman's doctor had told her that her illness would pass in a few months, and in the fall of 1990, Schuman's histoplasmosis symptoms did eventually disappear.

In the early fall of 1995, however, Schuman's histoplasmosis symptoms resurfaced. This time, Schuman was hospitalized and nearly died. Schuman's mother, Rachel Stuckey, came from her home in Fort Wayne to be at her daughter's bedside. After Schuman's release from the hospital, Stuckey took her daughter back to Fort Wayne to care for her.

As a result of contracting histoplasmosis, Schuman incurred $3,000 in medical bills in 1990 and over $135,000 in medical bills between 1995 and 1996, was forced to delay her employment as a registered nurse for over one year, and missed three months of full-time employment between 1995 and 1996. Schuman has also been informed that the histoplasmosis could resurface at any time.

On June 4, 1996, Schuman filed a Complaint for Personal Injury under three theories of liability: common law negligence; breach of implied warranty of habitation

---

1. According to the complaint, the diagnosing physician, Dr. Judy Monroe, described histoplasmosis as "a fungus, which is spread by spores that are typically carried in bird excrement, particularly pigeon droppings." *Appellant's Appendix* at 24.

and use; and breach of city ordinances 19–2 and 19–4 insofar as the apartments constituted a "nuisance" under the same. Stuckey also filed suit for negligent infliction of emotional distress. All claims were summarily dismissed by the trial court and affirmed by the court of appeals. On transfer, the supreme court affirmed the dismissal of all tort claims, but reversed and remanded with respect to Schuman's implied warranty of habitability claim. On remand, the Kobetses moved for partial judgment on the pleadings with respect to the damages available to Schuman based on the implied warranty claim. On January 10, 2001, the trial court granted the Kobet's motion and ordered that recovery in Schuman's claim for breach of implied warranty of habitability be limited to economic damages, thereby precluding any consequential damages.

Pursuant to Indiana Trial Rule 12(C), if on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. Because materials submitted outside of the pleadings were considered by the trial court, we will review this case as a ruling on a motion for summary judgment.

■ When reviewing a grant of summary judgment, we apply the same standard as the trial court. Summary judgment is appropriate only where the designated evidentiary material shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Hayden v. Paragon Steakhouse*, 731 N.E.2d 456 (Ind.Ct.App.2000). Once established, the burden then shifts to the nonmovant to respond with specifically designated facts that establish the existence of a genuine issue for trial. *Id.*

On review, we may not search the entire record to support the judgment, but may only consider that evidence which was specifically designated to the trial court. A presumption of validity clothes a trial court's grant of summary judgment, and the appellant has the burden of demonstrating to this Court that the trial court's grant of summary judgment was erroneous. However, we must carefully assess the trial court's decision to ensure the non-movant was not improperly denied his day in court.

*Id.* at 458 (citations omitted). We resolve all facts and reasonable inferences therefrom in favor of the nonmoving party. *Merchants Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383 (Ind.Ct. App.2000).

■ Following the trend of several other states, Indiana has reexamined the rights and duties governing the landlord-tenant relationship. Specifically, Indiana courts have progressively replaced the common-law doctrine of caveat lessee with the adoption of an implied warranty of habitability in the context of residential leases. *See Breezewood Mgmt. Co. v. Maltbie*, 411 N.E.2d 670 (Ind.Ct.App.1980) (holding that the tenants had a reasonable expectation that their housing would conform to the minimum housing code in effect, and when it did not conform, the landlord breached an implied warranty of habitability); *Barnes v. Mac Brown and Co., Inc.*, 264 Ind. 227, 342 N.E.2d 619 (Ind.1976) (extending a builder's implied warranty of habitability to a subsequent purchaser, limiting liability to latent defects not discoverable by a subsequent purchaser's reasonable inspection of the premises before the sale); *Theis v. Heuer*, 264 Ind. 1, 280 N.E.2d 300 (Ind.1972)

(holding that the rule of caveat emptor is no longer valid with regard to the sale of a new residence by the builder-vendor to the immediate purchaser). Although an implied warranty of habitability is not imposed by law on every residential lease contract, it may arise from the course of dealing between the parties and may be evidenced by acts done in the course of performance or by ordinary practices in the trade. *Johnson v. Scandia Assoc., Inc.*, 717 N.E.2d 24 (Ind.1999).

This movement away from caveat emptor reflects the recognition that the modern tenant lacks the skill and "know-how" to inspect and repair housing to determine if it is fit for its particular purpose. *Boston Housing Authority v. Hemingway*, 363 Mass. 184, 293 N.E.2d 831 (1973). The landlord, on the other hand, is more familiar with the dwelling unit and mechanical equipment attached to that unit, and is more financially able to "discover and cure" any faults and break-downs. *Hilder v. St. Peter*, 144 Vt. 150, 478 A.2d 202, 207 (1984) (quoting *Green v. Superior Court*, 10 Cal.3d 616, 111 Cal.Rptr. 704, 517 P.2d 1168, 1172 (1974)). Given the changing circumstances, imposing the doctrine of caveat lessee on residential leases would in effect shield landlords from liability and place tenants in an inferior bargaining position in comparison to that of the landlord. Thus, Indiana courts have consistently acknowledged the landlord's duty to render the premises habitable even in the absence of an express covenant.

Although Indiana clearly recognizes the implied warranty of habitability in the context of landlord-tenant disputes, it is less obvious whether the implied warranty provides the basis for relief on claims of personal injury. *See Hodge v. Nor-Cen, Inc.*, 527 N.E.2d 1157 (Ind.Ct.App.1988) (declining to address the extension of the warranty of habitability to personal injury

claims); *Old Town Dev. Co. v. Langford*, 349 N.E.2d 744 (Ind.Ct.App.1976) (holding that upon breach of an implied warranty of habitability, landlord is liable to tenant for all damages available under traditional remedies for breach of contract and for personal injury and personal property damage in tort under traditional negligence principles), *trans. granted* 267 Ind. 176, 369 N.E.2d 404 (Ind.1977) (vacating the court of appeals decision and later dismissing without further opinion because the parties had settled the matter and the question became moot). Until recently, discussions regarding remedies available under the implied warranty of habitability were limited. Previous cases indicated that the proper measure of damages for a landlord's breach of an implied warranty of habitability is the difference between the rents paid for the apartment as warranted and its fair rental value in the substandard condition, compensating the tenants for their economic loss. *Breezewood Mgmt. Co. v. Maltbie*, 411 N.E.2d 670. Upon review, Schuman requests that we extend the remedies available under contract law to include the expenses she has incurred as a result of the personal injuries sustained from the Kobetses' breach of implied warranty of habitability.

Schuman argues that consequential damages, including personal injury damages, are recoverable in Indiana under a claim for either breach of an implied warranty of quiet use and enjoyment or breach of an implied warranty of habitability. She maintains that when the consequential damages, including those for personal injury, are foreseeable, a tenant is entitled to recovery under a claim for breach of implied warranty of habitability. Because foreseeability is a question of fact for the jury, Schuman contends that the trial court erred by granting the Kobetses' motion for partial judgment on the plead-

ings limiting recovery to economic damages.

Both parties acknowledge that the determination of whether personal injury damages are recoverable under a breach of an implied warranty of habitability claim rests primarily on the interpretation of the supreme court's holding in *Johnson v. Scandia Assoc., Inc.* In *Johnson*, the supreme court affirmed the trial court's dismissal of tenant's claim for breach of warranty of habitability based on the tenant's failure to plead a factual basis showing that the landlord actually extended the warranty as part of the agreement, and thus a failure to state a valid claim that the warranty was breached. While dismissing the case, the supreme court also discussed the remedies available to a tenant presenting a valid claim against the landlord for a breach of an implied warranty of habitability. *Johnson v. Scandia Assoc., Inc.,* 717 N.E.2d 24 (Ind.1999). In its discussion, the court noted that under the rule espoused in *Hadley v. Baxendale,* 9 Ex. 341, 156 End. Rep. 620 (1854) consequential damages could be awarded on a breach of contract claim when the nonbreaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made. *Id.* Thus, in order to recover consequential damages in the context of a landlord-tenant dispute, the tenant must show that the parties intended to compensate for personal injury losses caused by the apartment's unfitness. *Id.* The court then concluded that "[w]here the warranty is express, consequential damages for injury to the person may be available as a remedy. Where the warranty is implied-in-fact, however, consequential damages may not be awarded because personal injury is outside the parties' contemplation." *Id.* at 32. This language indicates that the supreme court intended, as a matter of law, to preclude the recovery of personal injury and property damages in a breach of implied warranty of habitability claim. Thus, we reject Schuman's claim that her personal injuries were within the contemplation of the parties at the inception of the lease.

█ The fact that the Kobetses carried $4,000,000 in liability coverage to pay for personal injury damages is insufficient to support the conclusion that Schuman's personal injuries were within the contemplation of the parties at the inception of the lease. Similarly, while violations of city ordinances or housing codes may serve as proof of breach of a warranty, they do not establish the fact that personal injuries were within the parties' contemplation at the inception of the lease. Although we acknowledge that consequential damages are available under certain circumstances, e.g., where there is an express warranty, we hold that personal injury damages are, as a matter of law, not recoverable under the theory of implied warranty of habitability.

Several other states have also addressed the question of damages under the implied warranty of habitability and similarly declined to permit recovery of personal injury damages as matter of law. Illinois courts have explicitly held that no action for personal injuries or property damage can result from a breach of the implied warranty of habitability. *See Abram v. Litman,* 150 Ill.App.3d 174, 103 Ill.Dec. 349, 501 N.E.2d 370 (1986); *Auburn v. Amoco Oil Co.,* 106 Ill.App.3d 60, 61 Ill. Dec. 939, 435 N.E.2d 780 (1982); *Beese v. National Bank of Albany Park,* 82 Ill. App.3d 932, 38 Ill.Dec. 364, 403 N.E.2d 595 (1980); *Dapkunas v. Cagle,* 42 Ill.App.3d 644, 1 Ill.Dec. 387, 356 N.E.2d 575 (1976). While recognizing that a buyer has a cause of action for injuries to person or property proximately resulting from any breach of warranty under the Uniform Commercial

Code, the Illinois court of appeals nevertheless declined to extend the rule to the law of landlord and tenant. *Auburn v. Amoco Oil Co.*, 106 Ill.App.3d 60, 61 Ill. Dec. 939, 435 N.E.2d 780. The court further stated that claims for breach of implied warranty of habitability were "for a deterioration in the benefits from the lease rather than for personal injuries or property damage arising from a catastrophe." *Abram v. Litman*, 103 Ill.Dec. 349, 501 N.E.2d at 373 (quoting *Auburn v. Amoco Oil Co.*, 61 Ill.Dec. 939, 435 N.E.2d at 782).

In holding that liability of a landlord for tenant's injury could not be predicated on breach of warranty of habitability, the supreme court of Vermont noted that "in the adjudication of a lawsuit for relief from personal injury, the concepts of tort and negligence law provide the more straightforward way to describe the respective duties and liabilities of the parties." *Favreau v. Miller*, 156 Vt. 222, 591 A.2d 68, 73 (1991). Allowing a tenant to recover for personal injury damages under contract law necessarily raises questions regarding causation. *Id.* We agree that these are questions better left to be resolved by the rules developed under tort and negligence law. Thus, we are unwilling to extend the operation of the implied warranty of habitability to the extent requested by Schuman.

Furthermore, we believe this interpretation of *Johnson v. Scandia Associates, Inc.* is consistent with the supreme court's opinion in *Schuman I.* In *Schuman I*, the supreme court stated:

> Of course, Schuman's recovery on her contract claim will be defined by the law of contract. Her damages thus might be measured by the difference between the contract price and the market price of the apartment as delivered, for example, or by the difference between the value of the premises without promised repairs and with them. These damage rules are examples that are presumably applicable. Others may also apply, depending on the proof at trial.

*Schuman v. Kobets*, 716 N.E.2d 355, 357 (Ind.1999) (citations omitted). In issuing the following statement, the supreme court was well aware that Schuman was attempting to recover personal injury losses. Yet, the opinion focused on recovery as defined by the law of contracts, specifically providing two examples of economic measures for damages. Thus, we reject Schuman's contention that the permissive language used in the last sentence of the court's opinion authorizes the trial court to award damages for personal injury based on the breach of implied warranty of habitability claim. On the contrary, it is clear that the court intended to limit Schuman's recovery to economic damages.

Following *Johnson v. Scandia Associates, Inc.* and the trend of other states in regards to landlord-tenant disputes, we hold that the warranty of habitability implied in a lease of a dwelling does not give rise to a cause of action for personal injuries as a matter of law. Accordingly, we affirm the trial court's granting of the motion for partial judgment on the pleadings.

Judgment affirmed.

BAKER, J., and ROBB, J., concur.