## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 04 2019, 9:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffrey J. Jinks
Carmel, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mt. Helix Acquisitions, LLC, <br> *Appellant-Defendant,* <br><br> v. <br><br> Latanya Ashmore, <br> *Appellee-Plaintiff.* | March 4, 2019 <br><br> Court of Appeals Case No. 18A-PL-1284 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable David J. Dreyer, Judge <br><br> Trial Court Cause No. 49D10-1709-PL-34428 |

**Mathias, Judge.**

[1]   Mt. Helix Acquisitions, LLC ("Mt. Helix") appeals from an entry of judgment from the Marion Superior Court's review of a Center Township small claims matter concluding it owed former tenant Latanya Ashmore ("Ashmore")

damages in the amount of $7,700. Mt. Helix presents five issues for our court's consideration, which we consolidate into two issues:

1. Whether the interactions between Ashmore and Mt. Helix give rise to an implied warranty of habitability;

2. Whether Ashmore proved her damages claims by a preponderance of the evidence.

[2] We uphold the portion of the judgment for $2,700 as a result of electric charges incurred due to the condition of the property. We vacate the portion of the judgment awarding $5,000 for the loss of residence, homelessness, and hardship to the family accruing after Ashmore vacated the property, because those elements of damage were not proved by a preponderance of the evidence.

## Facts and Procedural History

[3] On March 31, 2017, Plaintiff Latanya Ashmore filed a complaint in Marion County Small Claims Court in Center Township. After a hearing on August 5, 2017, Ashmore was awarded $1,414. Mt. Helix appealed the small claims judgment, and the case was transferred to the Marion Superior Court. On September 20, 2017, the Superior Court issued an order requiring Ashmore to re-file her original complaint within twenty days.

[4] When Ashmore did not meet this deadline, Mt. Helix moved to dismiss the matter on October 19, 2017, which the trial court denied on October 24, 2017. Ashmore re-filed the Complaint with the trial court on October 26, 2017. The Amended Complaint alleged, in whole,

> I am asking for a hearing in this court to grant me a judgement [sic] in the sum of $5,000 because the defendant knowing[ly] moved me into the property know[ing] the utilities would exceed the rent. The furnace was outdated, also water heater, air ducts, and faulty wiring through the residents [sic]. I pray that court hears me and grant[s] me the judgement [sic].

Appellant's App. p. 15. On November 15, 2017, Mt. Helix filed its Answer and Statement of Affirmative Defenses. On December 20, 2017, Mt. Helix filed a Motion for Summary Judgment, which the trial court denied on December 21, 2017.[1] On January 25, 2018, the trial court held a hearing on the matter. Ashmore appeared in person and Mt. Helix appeared through counsel.

[5] At the hearing, Ashmore testified that Mt. Helix's property manager advised her that she was approved for move-in to a property through "HUD," but she could not because there were plumbing issues.[2] Tr. p. 4. The property manager then advised her that the company had a "better deal" for her. Tr. p. 5. She saw the suggested property, felt she had nowhere else to go for her and her children, and paid the first month's rent of $650, as well as the deposit, and moved in. Tr.

---

[1] Mt. Helix contends the trial court erred by not giving sufficient consideration to its summary judgment motion. It is well-settled law that summary judgment is inappropriate if any material facts are in dispute or if undisputed facts could lead to conflicting material inferences. Ind. Trial Rule 56; *Rogers v. Mendel*, 758 N.E.2d 946 (Ind. Ct. App. 2001), *trans. denied*. We cannot conclude on the facts in the Complaint and the Motion for Summary Judgment in front of the trial court that the denial of Mt. Helix's Motion for Summary Judgment was error.

[2] The acronym HUD is not explained in the record. However, "HUD" is commonly known as an acronym used to abbrevieate the United States Department of Housing Urban Development, which, among other functions, provides rent-assistance and low income housing to individuals in need. *See Generally* https://www.hud.gov/

p. 5. Ashmore testified that the first "light bill" she received was "almost $600."[3] Tr. p. 5. Ashmore further testified that she called the property manager and "they" came out several times to try to "winterize the property." Tr. p. 6. She applied for assistance because she could not afford the electric bill. Tr. p. 6. After speaking with the electric company again, she called property management, and the maintenance worker advised her that the furnace was outdated and needed a lot of work, the wiring was improperly installed, and the house needed insulation and roofing.

[6] Her next electric bill was "almost a thousand dollars." Tr. p. 8. After Ashmore received this bill, she advised management that she could not stay at the property because she would be unable to afford to stay due to the high light bills. Ashmore testified that Mt. Helix then filed for eviction, but dismissed the eviction due to the high bills. She further testified that the company ultimately released Ashmore from her lease. Since that time, Ashmore alleges she has been homeless; she has been turned down for other residences; her family has been separated; she cannot find anyone to help her with the light bill because it is too high; the last two years of her life have been ruined; and she cannot find anywhere to stay "because of the appeal." Tr pp. 8–9. Mt. Helix appeals the award of damages.

---

[3] The record refers to the bills at issue interchangeably as the light bill, the utility bill, and the electric bill. Ashmore confirmed that the property was completely electric, and the bills at issue will be referred to as the electric bills for the purposes of this opinion. *See* Tr. p. 15.

# Discussion and Decision

## I. Standard of Review

[7] We initially note that Ashmore did not file a brief on appeal. We do not undertake the burden of developing arguments on behalf of an appellee who does not file an appellee's brief and will reverse if the appellant establishes a prima facie error. *Windgate Properties, LLC v. Sanders*, 93 N.E.3d 809, 813 (Ind. Ct. App. 2018). "Prima facie, in this context, means at first sight, on first appearance, or on the face of it." *Id.* "This standard, however, 'does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required.'" *Id.* citing *Wharton v. State*, 42 N.E.3d 538, 541 (Ind. Ct. App. 2015).

[8] As directed by the General Assembly and affirmed by the court's rules, the small claims process is informal and is not bound by the rules of evidence. Ind. Small Claims Rule 8(A). We will not set aside a judgment entered by a bench without a jury unless clearly erroneous. Ind. Trial Rule 52(A). In determining whether a judgment is clearly erroneous, due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *Id.* The appellate tribunal does not reweigh the evidence or determine the credibility of witnesses but considers only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *City of Dunkirk Water & Sewage Dept. v. Hall*, 657 N.E.2d 115, 116 (Ind. 1995).

A judgment in favor of a party having the burden of proof will be affirmed if the evidence was such that from it a reasonable trier of fact could conclude that the elements of the party's claim were established by a preponderance of evidence. *Id.* "This deferential standard of review is particularly important in small claims actions, where trials are 'informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law." *Id.* (citing S.C.R. 8(A)).

## II. Implied Warranty of Habitability

Mt. Helix argues that Ashmore has not proven either breach of implied warranty of habitability or fraud. Before examining these doctrines, we note that Indiana Code section 32-31-8 *et. seq.* establishes a landlord's obligation under a rental agreement. Indiana Code section 32-31-8-5 specifically outlines the obligations of the landlord. It states, in relevant part:

> A landlord shall do the following:
>
> …
>
> (4) Provide and maintain the following items in a rental premises in a good and safe working condition, if provided on the premises at the time the rental agreement is entered into:
>
> (A) Electrical systems
>
> …
>
> (D) Heating, ventilating, and air conditioning systems. A heating system must be sufficient to adequately supply heat at all times.

Ind. Code §32-31-8-5(4).

[11] Since every Indiana landlord has a statutorily proscribed obligation to provide and maintain electrical, heating, ventilating, and air conditioning systems in good and safe working condition, we turn to examine Ashmore's complaints as allegations of a breach of implied warranty of habitability.

> When a landlord warrants his property to be suitable for living and then breaches that promise by conveying an unsuitable apartment, the tenant's remedy may take several forms, including conveyance of a suitable property, recission and reformation of the agreement while the tenant retains possession, recision of the contract, or damages at law. The thread tying the remedy to the breach is the nature of the promise: at an agreed rental price, the landlord will convey to the tenant an apartment he warrants as suitable for living.

*Johnson v. Scandia Associates, Inc.*, 717 N.E.2d 24 (Ind. 1999).

[12] "Following the trend of several other states, Indiana has reexamined the rights and duties governing the landlord-tenant relationship. Specifically, Indiana courts have progressively replaced the common-law doctrine of caveat lessee with the adoption of an implied warranty of habitability in the context of residential leases." *Schuman v. Kobets*, 760 N.E.2d 682, 684 (Ind. Ct. App. 2002).

> This movement away from caveat emptor reflects the recognition that the modern tenant lacks the skill and "know-how" to inspect and repair housing to determine if it is fit for its particular purpose. The landlord, on the other hand, is more familiar with the dwelling unit and mechanical equipment attached to that

unity, and is more financially able to 'discover and cure' any faults and break-downs.

*Id.* at 685 (internal citations omitted). "Even though an implied warranty of habitability is not *imposed by law* on every residential lease contract, it may be *imposed in fact* in the agreement between the landlord and tenant." *Scandia*, 717 N.E. 2d at 31 (emphasis in original)

[13] In the instant matter, Ashmore's complaint alleges, in whole,

> I am asking for a hearing in this court to grant me a judgement [sic] in the sum of $5,000 because the defendant knowing moved me into the property know[ing] the utilities would exceed the rent. The furnace was outdated, also water heater, air ducts, and faulty wiring through the residents [sic]. I pray that court hears me and grant me the judgement [sic].

Appellant's App. p. 15.

[14] At the hearing, Ashmore provided uncontroverted testimony that Ashmore approached Mt. Helix as a HUD-approved applicant. Ashmore was told that the HUD-approved property which she was initially seeking was unavailable due to "plumbing issues." Tr. p. 4. However, the property manager presented her with a "better deal" on a "newer" property. Tr. p. 5. Ashmore testified that she had nowhere else to go, so she entered into the agreement, paid her rent and deposit, and moved in. The record also contains uncontroverted testimony that, after Ashmore complained about the surprisingly high electric bills, the maintenance worker informed her that "basically, the property was – it was old

and it needed a lot of electricity work done, a lot of furnace work done, it needed a lot of insulation, even roofing." Tr. p. 8. Ashmore also testified, "I'm not an electrician, I'm not a plumber 'cause if I was I wouldn't have never moved onto the property." Tr. p. 20.

In the small claims context, Ashmore's testimony regarding her interactions with the property manager when choosing to enter into the lease has established an implied warranty of habitability. She has also shown a breach. Because the implied warranty of habitability has been breached in this matter, we do not analyze for fraud. We now turn to whether Ashmore proved the two separate damage awards by a preponderance of the evidence.

## III. Damages

Common law acknowledges that "[h]abitability is not the same as no risk of harm. Conditions which might cause injury can flow from many actors besides the lessor- builders, independent contractors, or even negligence by visitors. An apartment can thus provide adequate shelter and amentities, as promised, and still be a place which presents some risk." *Johnson*, 717 N.E.2d at 32 (denying appellant damages for personal injury when she suffered physical injuries caused by an electric shock she received when simultaneously touching two kitchen appliances while cooking in her apartment). "Where the warranty is express, consequential damages for injury to the person may be available as a remedy. Where the warranty is implied-in-fact, however, consequential damages may not be awarded because personal injury is outside the parties' contemplation." *Id.*

*A. Damages for Electric Bills*

[17] Here, the damages Ashmore alleges she incurred due to excessively high utility bills derive directly from the suitability of the property as a residence and factors in Mt. Helix's control. Accordingly, we review whether Ashmore proved damages by a preponderance of the evidence. *See City of Dunkirk Water & Sewage Dept.*, 657 N.E.2d at 116, *supra.*

[18] The trial court awarded Ashmore $2,700 for the excessive utility bills incurred while leasing the property from Mt. Helix. Ashmore testified that Mt. Helix was unable to move her into a HUD-approved property due to plumbing issues and directed her toward the property she ultimately leased as a "better deal." Ashmore testified that the first electric bill she received was $600. Tr. 5. When trying to resolve the issue with the high electric bills, Ashmore was told by a maintenance worker that "basically, the property was – it was old and it needed a lot of electricity work done, a lot of furnace work done, it needed a lot of insulation, even roofing." Tr. p. 8. After this, she received an electricity bill totaling approximately $1,000. The last bill she received totaled $2,700 for approximately three months in the property.[4]

[19] Mt. Helix did not dispute Ashmore's testimony regarding the amounts of the bills she was receiving for electricity, except to object to the form of the

_____

[4] The lease agreement shows it began on November 11, 2014. Appellant's App. p. 32. The record is unclear as to exactly when Ashmore vacated the property; however, Mt. Helix asserts that eviction proceedings occurred in February of 2015. Appellant's Br. p. 4.

evidence offered regarding the amount.[5] Ashmore also testified that Mt. Helix "let her out" of her lease due to the high electric bills. Mt. Helix did not present any evidence controverting this assertion by Ashmore and states on appeal that eviction proceedings were filed against Ashmore, "but the case was eventually dismissed by agreement of the parties." Appellant's. Br. p. 4. Moreover, Mt. Helix was in control of the condition of the furnace, insulation, roofing, and wiring, which all affect the cost of electricity for the tenant.

[20] Here, in a small claims matter, without reweighing the evidence or judging the credibility of the witnesses, Ashmore's uncontroverted testimony regarding the contents of her electric bills and the admissible hearsay statements of the maintenance worker was sufficient to prove the amounts of her electric bills by a preponderance of the evidence.

## B. Damages Arising Due to Vacating the Property

[21] The trial court awarded Ashmore with $5,000 for her homelessness resulting from her difficulties with paying the electric bill for the leased property that led her to seek to end the agreement. Mt. Helix presents a number of arguments against this award; however, we review with an eye toward whether Ashmore

---

[5] Mt. Helix challenges the testimonial evidence provided by Ashmore regarding the total amount of her electric bills as improper pursuant to the "best evidence rule" contained in Indiana Evidence Rule 1002. It requires that "[a]n original writing, recording, or photograph […] in order to prove its contents unless these rules or a statute provides otherwise." Evid. R. 1002. However, the rules of evidence are not binding on small claims matters, and the trial court properly overruled Mt. Helix's objections on these grounds. Ind. Small Claims Rule 8(a).

was able to prove the contested award of damages by a preponderance of the evidence. Here, Ashmore introduced only testimonial evidence regarding homelessness and the resulting hardships she incurred after leaving the residence at issue. She testified that:

> Upon, that, because of this, I have been homeless, I've turned --- I've been turned down for places . . . to stay, I've been rejected for help because the light bill is too high for anybody to help me pay it. Because of this, my family has been separated and literally, the last two years of my life has been ruined. It's happening, because of the appeal I cannot find nowhere to stay.

Tr. pp. 8–9.

[22] The court later attempted to clarify with Ashmore what amounts she was asking be awarded and for what reason. The exchange reads:

> THE COURT: Okay, so when you went to Small Claims Court what were you asking the Small Claims Court for?
>
> MS. ASHMORE: Five Thousand Dollars.
>
> THE COURT: Okay, and what was that based on?
>
> MS. ASHMORE: It was based on the light bill and me any [sic] kids being homeless and being turned down for several different properties from moving and staying from place to place.
>
> THE COURT: And what I saw – what I saw on our record was that they had --- and this is not --- I'm not bound by anything, this is not pending or doesn't have any --- but I saw they made an entry for $1,400?

MS. ASHMORE: Yes

THE COURT: What was that based on? I'm trying to get to what your case was about.

MS. ASHMORE: The –he awarded be for the deposit back. [sic]

THE COURT: Okay, so the money about the deposit or the rent or some of those expenses, okay.

MS. ASHMORE: Yes

THE COURT: But you had asked for all kinds of other things and that's what you're asking now, right?

MS. ASHMORE: I'm asking now, yes.

THE COURT: Okay, for the 650 that you paid?

MS. ASHMORE: No, because of the current light bill. You asking why I'm asking for the whole 5,000?

THE COURT: Yeah, right.

MS. ASHMORE: It's because of the current light bill and just for hardship on me and my kids from having to move and be rejected from place to place.

THE COURT: Okay, so you think it's about $2,000, you're saying, right?

MS. ASHMORE: Yes.

***

THE COURT: Okay, that you say is caused by them ---by this landlord?

MS. ASHMORE: Yes.

Tr. pp. 9–10. The above testimony is the entirety of the evidence regarding these damages. Here, taking the evidence as it is, without weighing credibility, the record contains only Ashmore's testimony that she suffered homelessness, had to move, her family was separated and she was "rejected from place to place." Ashmore testified that she was asking for $5,000 "because of the current light bill *and* just for hardship on me and my kids." Tr. p. 10. (emphasis added). She did not provide any further information about specific expenses incurred, rejected applications, or other hardships. Moreover, Ashmore did not provide evidence of a direct link between her generalized assertions and Mt. Helix's action or inaction regarding matters over which it had any control.

[23] Additionally, it appears that Ashmore asked for $5,000 for the combined utility expenses and the subsequent hardships she endured, not solely the alleged hardships occurring after she vacated the property. Without more, these generalized assertions regarding her hardships do not rise to the level of proving an award of $5,000 for homelessness by a preponderance of the evidence.

# Conclusion

[24] The interactions between Ashmore and Mt. Helix gave rise to a statutory warranty of habitability in this matter. Because she was able to prove her damages for excessive electrical bills by a preponderance of the evidence in this small claims matter, we affirm the award of $2,700. However, because Ashmore was unable to meet this same standard to prove damages after she vacated the property, we reverse the award of $5,000.

Bailey, J., and Bradford, J., concur.