Swan, J.
Joseph W. Sarno (“Sarno”) commenced a summary process action against Karen Ingalls (“Ingalls”), Michael Ingalls, and Thomas Turner (collectively, the “defendants”) for eviction from a first-floor apartment at 4 Capen Street in Medford for nonpayment of rent. The trial court awarded Sarno possession and damages against the defendants and “any and all others.” The defendants appealed.
The docket indicates that only Ingalls filed an answer, and defense counsel filed an appearance only for her. Moreover, the trial judge’s findings relate only to her. From this, we conclude that judgment was taken against the other defendants by default, and as no issues for appeal have been preserved by them, their appeal must be dismissed.
We summarize the facts as found by the judge, and as may be supplemented by *192 the record on appeal.[2] Sarno and Ingalls executed a written agreement for a tenancy at will of the apartment, commencing March 1, 2008, for a monthly rent of $900.00. The agreement provided that personal services such as shopping and cooking for Sarno, who lived on the second floor of the premises, could be performed in lieu of some rent. Prior to commencement of the tenancy, the Medford building inspector warned Sarno that the front porch to the apartment was in poor condition because of weathering and lack of care.[3] At one point during her tenancy, Ingalls fell in a hole in the floor boards of the porch, after which the Medford building department and board of health issued a notice of violation of the State Sanitary Code. Also, there were some tiles missing from the bathroom ceiling and walls; the bathroom sink leaked; the bathtub wall needed some repair; and a pantry window was broken. Otherwise, the apartment was in a generally good condition.
Ingalls defaulted in rent payments for three months, and Sarno served a notice to quit on November 4, 2008. The court found that at the time of trial, Ingalls owed rent for four months, totaling $3,600.00, and that Sarno had breached the implied warranty of habitability, resulting in a rent abatement of fifteen (15%) percent, or $1,485.00 (0.15 x $900.00 x 11 months[4]), thereby reducing the amount due to Sarno to $2,115.00. Upon the failure of Ingalls to pay that amount in accordance with G.Lc. 239, §8A, the court ordered that judgment for possession and damages in the sum of $2,115.00 enter for Sarno. The trial court specifically found no facts to sup *193 port a finding of interference with Ingalls’ use and quiet enjoyment of the apartment under G.L.c. 186, §14.[5] Payment was not made as ordered, and judgment entered accordingly.
Initially, we must discern what the issue is on appeal. We begin, as we must, with the notice of appeal. See Chumbiray v. Central-Chrysler Plymouth Jeep Eagle, 1998 Mass. App. Div. 1 n.1. The notice states: “Defendants claim that it was an error of law to permit Plaintiff to recover possession of residential property where there is a condition that endangers or materially impairs the health, safety or well being of the occupants AND there was no evidence that Michael Ingalls or Thomas Turner owe any rent to the Plaintiff (emphasis in original).[6] The right of Sarno to recover possession is governed by G.L.c. 239, §8A, fifth par., which provides:
There shall be no recovery of possession under this chapter if the amount found by the court to be due the landlord equals or is less than the amount found to be due the tenant or occupant by reason of any counterclaim or defense under this section. If the amount found to be due the landlord exceeds the amount found to be due the tenant or occupant, there shall be no recovery of possession if the tenant or occupant, within one week after having received written notice from the court of the balance due, pays to the clerk the balance due the landlord, together with interest and costs of suit, less any credit due the tenant or occupant for funds already paid by him to the clerk under this section. In such event, no judgment shall enter until after the expiration of the time for such payment and the tenant has failed to make such payment. Any such payment received by the clerk shall be held by him subject to the provisions of the preceding paragraph.
*194 The trial court, after conducting a full trial, determined that the defective porch resulted in a fifteen (15%) percent rent reduction and allowed one week for payment in accordance with the statute. A judge’s finding of fact is binding on this Division and “will not be deemed ‘clearly erroneous’ unless the [Division] on the entire evidence is left with the firm conviction that a mistake has been made.” Capitol Bank & Trust Co. v. Richman, 19 Mass. App. Ct. 515, 519 (1985). There was no error.
Ingalls deviates, however, from her notice of appeal and offers a different point in her brief: “This court should overturn the Judgment of money and possession for Landlord as the rental value for an apartment a landlord leases knowing it had a condition that was in serious violation of the State Sanitary Code endangering the health and safety of the occupants should be zero.” With Ingalls having elected to proceed by expedited appeal under Dist./Mun. Cts. R. A. D. A., Rule 8A, the issues on appeal are limited to those raised in the notice of appeal. Chumbiray, supra. The issue raised in the brief, however, is so closely aligned with the issue stated in the notice that we consider it. See Dist/Mun. Cts. R. A D. A, Rule 2.
Ingalls cites no authority for her position, and conceded at oral argument that there is none. She relies instead on the fourth paragraph of G.L.c. 239, §8A, stating, ‘There shall be no recovery of possession pursuant to this chapter pending final disposition of the plaintiffs action if the court finds that the requirements of the second paragraph have been met.” Those requirements that are relevant here consist of a showing that the landlord “knew of such conditions before the tenant or occupant was in arrears” in rent and that the conditions were not caused by the tenant. G.L.c. 239, §8A, second par. The statute addresses only the recovery of possession “pending final disposition” of the summary process action; nowhere does it mandate a “zero” recovery after disposition.
To the contrary, it is well established that damages are measured by the difference between the value of the dwelling unit as warranted and the value of the dwelling unit in its defective condition. Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 203 (1973). The methodology for computing damages has been set forth by the Appeals Court in McKenna v. Begin, 3 Mass. App. Ct. 168 (1975) (“McKenna I“) and McKenna v. Begin, 5 Mass. App. Ct. 304 (1977) (“McKenna II“), viz.:
If it is shown that the defective conditions existed at the inception of the tenancy, damages shall be computed from that time. If the conditions are shown to have arisen during the tenancy, damages are to be computed from the time the landlord first knew or was notified of their existence. In either case, damages shall run to the date on which the tenant ceased to occupy the premises or to the entry of the final decree, whichever came first. In any event, the tenant shall not be awarded damages in excess of the rent actually paid by him during the period of his occupancy of the premises.
McKenna I, supra at 174. And while “it is possible, in a given instance, for substantial defects to reduce the fair rental value of the premises to zero,” (emphasis added) id. at 171, it is not inevitable. Rather, the “court is to determine the percentage reduction factor applicable to each major violation, total the percentages to arrive at an aggregate percentage reduction factor, and then assess as damages that percentage of [tenant’s] weekly rent for each of the weeks during which the defects remained unre- *195 paired.” McKenna II, supra at 311. As noted, that is exactly what the trial judge did here. The Appeals Court added, “We recognize that computing damages under this approach involves some uncertainty.” Id. We do as well, and, again, find no error.[7]
Judgment affirmed.
So ordered.

 We are limited to the trial court record before us, which, in this case, is the “Summary of Undisputed Facts and Evidence Relavent [sic] to the Issues Presented on Appeal” prepared and submitted, apparently without objection, by Ingalls as part of her Dist/Mun. Cts. R. A. D. A., Rule 8A expedited appeal.

 It is unclear from the record when, how, and to what extent Sarno was informed of the defective porch. In her summary of “undisputed facts,” Ingalls states that prior to the commencement of her tenancy, the building department warned Santo of “significant defects of the front porch,” and instructed him to make repairs. Sarno failed to object to this statement. In his own brief, Sarno asserts that, at trial, the city code enforcement officer testified that he had “suggested” the installation of a support beam in 2007, but did not “deem it necessary to file a formal complaint or even return to the premises for a followup inspection.” This testimony is not before us, as Sarno failed to object to its omission pursuant to Dist./Mun. Cts. R. A. D. A., Rule 8A(b). In any event, there is no evidence of a written correction notice prior to commencement of the tenancy. There is evidence, however, of a board of health correction order, citing the front porch as “ [i] n very bad disrepair and declared unsafe.” This was dated November 3, 2008, long after the commencement of the tenancy. (Proof of written notice “shall create a presumption that on the date such notice was received, such person knew of the conditions revealed by such inspection and mentioned in such notice” [emphasis added] G.L.c. 239, §8A, third par.) In any event, neither party disputes the judge’s finding that Santo knew, prior to the tenancy, that the porch was in “poor condition.”

 The eleven-month period was presumably calculated from commencement of the tenancy (March 1, 2008) to the date of the issuance of the court’s findings (January 13, 2009).

 Ingalls filed an answer, but no counterclaim. In the answer, she denied that she owed three months of rent, and claimed that she was withholding rent because Sarno “had failed to maintain the apartment as required,” and that Sarno was trying to evict her for exercising her rights of “[1] awful withholding of rent.” The trial judge, in his findings, viewed the answer as asserting a counterclaim for breach of the implied warranty of habitability and for interference with quiet enjoyment. The answer also suggests reprisal, which is the basis for a claim under G.L.c. 186, §18. Indeed, the record shows that Sarno was sent the notice of a health code violation from the Medford board of health on November 3, 2008, and that he served a notice to quit on Ingalls the following day. Reprisal does not appear to have been an issue at trial, and was addressed in neither the Ingalls’ request for rulings, nor the judge’s findings. It has not been argued on appeal. Accordingly, the appeal concerns only the warranty of habitability claim.

 Since we dismiss the appeal of Michael Ingalls and Thomas Turner because of their nonparticipation in the defense of the action, we decline to address the question of sufficiency of the evidence of their rent liability.

 In her expedited appeal, Ingalls appears to raise another point, which is but a rephrasing of her briefed and argued issue: “Defendants claim to be aggrieved by the denial of request # 3.” The request in question was a request for a ruling of law, to wit, “A Landlord who knew of the substandard condition of the premise [sic] before delivering notice of non payment [sic] of rent cannot recover possession of the premise [sic] until the deficiencies have been corrected. M.G.L. 239 & 8A ¶4." Aside from the fact that the request was presumably made under the previously repealed Mass. R. Civ. R, Rule 64A, and thus could have been ignored by the trial judge, it was properly denied because, for the reasons heretofore given, it is an incorrect statement of the law.